UNITED STATES of America, Appellee,

v.

Bernard Douglas HENDERSON,
Appellant.

No. 82–5069.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1983.

Decided Sept. 6, 1983.

Certiorari Denied Jan. 23, 1984.
See 104 S.Ct. 1006.

Martha F. Rasin, Annapolis, Md. (Bruce C. Bereano, Annapolis, Md., on brief), for appellant.

Richard E. Dunne, III, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Andre M. Davis, Asst. U.S. Atty., Baltimore, Md., on brief), for appellee.

Before HALL, SPROUSE and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Bernard D. Henderson was convicted by a jury of bank robbery, bank larceny and assault with a deadly weapon while committing the robbery, in violation of 18 U.S.C. §§ 2113(a), (b), (d), and (f) and § 2.

On appeal, Henderson contends that the government improperly bolstered the testimony of its main witness, prior to any challenge to the witness's credibility, by putting before the jury on direct examination the contents of the witness's plea bargain, which included a promise to give truthful testimony. Henderson also claims that the testimony of another prosecution witness was inadmissible. We affirm.

## I.

In the midmorning of July 24, 1981, a man wearing a plaid shirt, jeans, a cap and sunglasses walked up to the guard at the Liberty Heights Avenue office of the federally insured Union Trust Bank in Baltimore. The man swiftly disarmed the guard and announced that a stickup was underway. Two men wearing stocking caps entered the bank and appropriated some money, which included a number of "bait bills." The robbers then left. Outside the bank, the guard was informed by a bystander that the culprits might have fled in a grey Chevrolet with the license plate DLC 606.

About two hours after the robbery, the police located the possible getaway car outside a house which Henderson stipulated at trial was his home. The police later obtained a search warrant for the house; the search turned up $940.00 in twenties, including 15 of the "bait bills" taken from Union Trust, in a purse which also contained personal papers of Henderson and his wife. Also found were articles of clothing corresponding to the descriptions of the robbers' attire, and some 9 mm ammunition congruent with the gun one of the robbers had carried.

On July 28, Henderson and his brother, another suspect in the robbery, were arrested. In the car in which they were driving the police discovered the bank guard's revolver.

Henderson was indicted, and the case proceeded to trial on November 30, 1981. The government's case against Henderson rested in part on the testimony of Lanard Pegeus, allegedly another one of the robbers, who had reached a plea agreement with the government. Pegeus's plea bargain included a condition that he "fully and truthfully respond to all questions" concerning bank robberies, put by federal officials before grand juries or at trials.

During the government's direct examination of Pegeus, the prosecutor began to question Pegeus concerning the plea bargain. When the prosecutor asked "What are your obligations under the agreement?," defense counsel interrupted. At a bench conference, defense counsel objected to the government reading from or introducing the plea agreement letter, stating that "there are aspects of that letter that are just self-serving, and seem to bolster the witness before he is impeached, or there is any question as to his credibility." The attorney further explained that his objection was to the language in the letter concerning Pegeus's promise "to give truthful testimony." The judge overruled the objection and the prosecutor proceeded to elicit from Pegeus the terms of the agreement, including the promise of truthfulness.

On cross-examination of Pegeus, the witness could not remember when he first told the police about Henderson's involvement in the robbery, but speculated that it was about the time of his plea bargain in late

October 1981. On rebuttal, the government refreshed Pegeus's memory with a copy of his post-arrest statement made in August 1981. Pegeus then testified that at the time of his arrest he identified Henderson as one of the robbers. The government was subsequently permitted to call an FBI agent to testify about Pegeus's post-arrest account of the robbery under Fed.R.Evid. 801(d)(1)(B) (prior consistent statements not hearsay if offered to rebut charge of recent fabrication or improper influence or motive). Defense counsel objected unsuccessfully to the agent's testimony which repeated in detail Pegeus's account of the robbery.

## II.

Testimony concerning the existence of a plea or immunity agreement concerning a government witness can cut both ways. On the one hand, as in *Hoover v. Maryland,* 714 F.2d 301 (4th Cir.1983), the agreement's existence or terms may undermine the witness's credibility by showing that the witness's devotion to the truth may be threatened by the great personal gains to be secured by testifying in the manner desired by the government. On the other hand, the agreement may aid the government by indicating the witness's knowledge of the crime or by improperly suggesting "that the prosecutor is forcing the truth from his witness and [thereby conveying] the unspoken message ... that the prosecutor knows what the truth is and is assuring its revelation." *United States v. Roberts,* 618 F.2d 530, 536 (9th Cir.1980), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981).

▮ A party may impeach its own witness, Fed.R.Evid. 607, and it is generally recognized that the existence of a plea agreement "may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe." *United States v. Halbert,* 640 F.2d 1000, 1004 (9th Cir.1981). At least where the defendant plans to impeach a witness by showing the existence of a plea agreement, the government's direct examination need

not be restricted to the scope of the defendant's intended cross-examination. *United States v. Whitehead,* 618 F.2d 523, 529 (4th Cir.1980).

The government's freedom to explore the details of its plea arrangements with its witnesses is not unlimited. As a general rule a witness's credibility may not be rehabilitated unless it first has been challenged. *See* Fed.R.Evid. 608(a)(2). In order to avoid improper bolstering of a witness's testimony on direct examination, the rule in the Second Circuit is that

> the government may not introduce the entire cooperation agreement on direct examination of its witness since the witness' credibility has not been attacked and the entire cooperation agreement bolsters more than it impeaches.

*United States v. Edwards,* 631 F.2d 1049, 1052 (2d Cir.1980). The Ninth Circuit follows a similar rule:

> A strong case can be made for excluding a plea agreement promise of truthfulness .... A trial court should be alert to the problem of vouching before admitting a plea agreement containing a promise to testify truthfully. The court should consider the phrasing and content of the promise to ascertain its implications and decide whether an instruction to the jury would dispel any improper suggestions.

*Roberts,* 618 F.2d at 536.

On the other hand, the Seventh Circuit perceives no problem in eliciting a plea bargain or immunity agreement promise of truthfulness on direct examination unless there is some additional implication that the government possessed special knowledge of the witness's veracity. *See, e.g., United States v. Hedman,* 630 F.2d 1184, 1198–9 (7th Cir.1980). That court does not view the prosecutor's questioning the witness, without more, as a form of governmental bolstering or vouching of the witness's testimony. *United States v. Craig,* 573 F.2d 513, 519 (7th Cir.1978), *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 111 (1978). The First Circuit agrees. *United States v. Winter,* 663 F.2d 1120, 1133 (1st Cir.1981).

We have not squarely addressed the propriety of eliciting a plea bargain promise of truthfulness where, as here, the defense has not indicated that it intends to use the plea bargain to attack the witness's credibility. *Cf. Whitehead,* 618 F.2d at 529 (defense informed prosecution beforehand of intention to use plea bargain); *United States v. McEachern,* 675 F.2d 618, 624 (4th Cir.1982) (plea bargain first mentioned in defense counsel's opening argument). However, *Whitehead* strongly suggests agreement with the approach of the First and Seventh Circuits. One of the defendants in *Whitehead* indicated that he would "forego any reference to the witnesses' plea agreements ... to avoid any introduction of the pleas into evidence." 618 F.2d at 529 n. 11. This court rejected his argument on appeal that severance was mandated when the government was allowed to go into the agreements on direct examination anyway. *Id.* This holding indicates that the *Whitehead* court perceived no error in permitting the government to elicit details of a plea agreement regardless of the defense's intentions concerning its use for impeachment purposes.

In the present case, there is no evidence that the government derived any improper advantage from Pegeus's testimony concerning his promise to be truthful. The prosecutor's questions do not imply that the government had special knowledge of Pegeus's veracity. The trial judge instructed the jury on the caution necessary in evaluating testimony given pursuant to a plea bargain. Henderson makes no claim that the prosecutor made improper use of the plea bargain promise of truthfulness in closing argument. The promise was not "disproportionately emphasized or repeated." *Halbert,* 640 F.2d at 1005.

We conclude therefore that the district court did not abuse its discretion in permitting the government to introduce the terms of Pegeus's plea bargain during the government's case in chief.

## III.

Henderson's cross-examination of Pegeus evoked from the latter the mistaken suggestion that he first identified Henderson as one of the robbers at the same time he reached a plea agreement with the government. This allowed the inference that Pegeus fabricated his allegations against Henderson in return for leniency. The government responded by successfully refreshing Pegeus's memory on redirect examination, but not content with this, the prosecutor proceeded to seek to rehabilitate Pegeus further by presenting his prior consistent statements as related by an FBI agent.

Henderson and the government agree that *United States v. Weil,* 561 F.2d 1109 (4th Cir.1977) is controlling. In *Weil,* the government was permitted on redirect examination to corroborate its principal witness's testimony by that witness's own recollection of his prior consistent statement given in writing after the defense on cross-examination had attempted to show that the witness, an accomplice, was promised leniency in return for his testimony. This court stated that the objection to the prosecutor's question during redirect should have been sustained because "it does not appear that the signed statement was given prior to [the time of the offer of leniency]." *Id.* at 1111. Thus, we have accepted the gloss on Federal Rule of Evidence 801(d)(1)(B) that a prior consistent statement is admissible under the rule only if the statement was made prior to the time the supposed motive to falsify arose.[1] *See, e.g., United States v. Fayette,* 388 F.2d 728, 733 (2d Cir.1968).[2]

Henderson contends that Pegeus's motive for fabrication arose at the time of his arrest, and that *Weil* therefore mandates reversal of his conviction. But as the

---

**1.** Language in our opinion in *United States v. Parodi,* 703 F.2d 768, 787 (4th Cir.1983), may suggest a different reading of *Weil.* The holding in *Parodi,* however, is fully consistent with our decision in the present case.

**2.** The *Weil* court did not reverse the conviction because the corroborative question was originally asked and answered without objection on direct examination. *Weil,* 561 F.2d at 1111.

government cogently replies, Henderson's argument effectively swallows the rule with respect to prior consistent statements made to government officers: by definition such statements would never be prior to the event of apprehension or investigation by the government which gave rise to a motive to falsify. Such a result also would render superfluous our distinction in *Weil* between statements made to police after arrest but before a bargain and statements made after an agreement is reached. *Weil*, 561 F.2d at 1111 n. 2. *See also United States v. Dominguez*, 604 F.2d 304, 311 (4th Cir.1979). We decline so to eviscerate Rule 801(d)(1)(B). While we think that most, if not all, of the FBI agent's testimony in the present case was cumulative, it was not error to permit its admission.

IV.

The judgment of the district court is AFFIRMED.