914 F.2d 1493
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Winston POTTINGER, Defendant-Appellant.
 No. 89-5670.
 United States Court of Appeals, Fourth Circuit.
 Argued July 19, 1990.
Decided Sept. 24, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CR-89-87).
 Marye Louise Wright, Charleston, W.Va., argued for Appellant.
 John Kirk Brandfass, Assistant United States Attorney, Charleston, W.Va., argued for Appellee; Michael W. Carey, United States Attorney, Charleston, W.Va., on brief.
 S.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER, and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 William Pottinger was indicted for one count of conspiracy to possess with the intent to distribute crack cocaine and one count of possession with the intent to distribute approximately three ounces of crack cocaine. In a jury trial below, he was convicted on both counts. In this appeal, he has alleged numerous errors in the conduct of his trial. Finding no error, we affirm.
 
 I.
 
 2
 An exhaustive recitation of the facts is not necessary in order to explain our decision. Briefly, Pottinger was arrested at the Yeager Airport in Charleston, West Virginia, on April 5, 1989. An informant had told the police that a black male and a black female of Jamaican descent would be arriving on a flight from New York at approximately 3:25 p.m. Pottinger (a black Jamaican male) did arrive on that flight, travelling with Patricia Franklin (a black Jamaican female). They travelled quickly through the airport, each toting a carry-on type bag. The two were approached by a group of police officers as they were about to enter a taxi. The officers talked to Franklin and Pottinger separately. Pottinger claimed not to know Franklin. Pottinger was then taken away to a parking lot in the airport and asked further questions. Pottinger had not been read his Miranda rights at this point. Meanwhile, the police officers stated to Franklin that they wished to examine the carry-on bag in her possession. She denied that the bag was hers, claiming that it belonged to Pottinger. Soon thereafter, a drug detection dog alerted to the bag, indicating that the dog sensed that it contained cocaine. A search revealed crack cocaine. Both Franklin and Pottinger were immediately arrested. Further facts will be discussed as necessary to analyze each appeals point.
 
 II.
 
 3
 Pottinger has alleged that certain statements which he allegedly made should not have been admitted into evidence because they were obtained by a violation of his constitutional rights. First, Pottinger has claimed that the statements which he made to Sergeant Terry Sayre should have been suppressed. Sayre was one of several officers who approached Pottinger after he came out of the baggage claim area of the airport. Pottinger was asked several questions regarding whether he knew the female who had been with him (Franklin). The police officers had not read Pottinger his Miranda rights at this point, and Pottinger had not been taken to the parking lot for further questions at this time. The trial court found that Pottinger was free to leave up until the time Pottinger was taken to the parking lot and that anything Pottinger had said before that time was voluntary and consensual. We find that the district court was not clearly erroneous in finding that Pottinger had not been seized and was free to leave at the time that he made statements to Sayre, and thus it was proper to admit Sayre's testimony regarding this conversation at trial.
 
 
 4
 Pottinger was next removed to the parking lot and asked more questions by Officer Jack Jordan. Pottinger was not advised of his Miranda rights at this time, and the trial court found that Pottinger was not free to leave at this point. Thus Pottinger had been seized, and the statements that he made to Jordan were suppressed at trial since Pottinger had not been advised of his rights. The government has not contested this ruling on appeal.
 
 
 5
 While Pottinger and Jordan were talking in the parking lot, the police dog alerted to the bag, and Pottinger and Franklin were arrested. Sayre then advised Pottinger of his Miranda rights, and Pottinger indicated that he understood each right as it was read to him. At trial, Lieutenant Larry Dodson testified that while Pottinger was being transported to the police station, he gave a number of incriminating answers to questions posed by Dodson. Dodson started this conversation, by stating "If you want to cooperate, now's the time to do it. You know, you're the only one who can help yourself." Pottinger then answered questions about the cocaine. He stated that there were three ounces of cocaine, that he paid twenty seven hundred dollars for it in New York City, and that "two black guys in New York City made him do it." Pottinger later denied making these statements and sought to have them suppressed.
 
 
 6
 Below, Pottinger's counsel claimed that these statements were not made freely, because Pottinger could have only understood Officer Dodson's statement as meaning that anything said by Pottinger would be used only to help him, not to prosecute him. The district judge rejected this argument, finding that the statements were made "voluntarily, and knowingly after having received and understood his Miranda warnings." Pottinger has appealed this ruling.
 
 
 7
 We find the contention of the government that Pottinger's position that he must have felt that his statements would not be used against him is purely speculative and not supported by the record. The record indicates that Pottinger was advised of his rights and told that anything he said could be used against him in the future, and Pottinger stated that he understood these rights. He was not threatened by anyone. He never requested the assistance of an attorney. He did not request that the questioning cease. No promises were made in return for Pottinger's cooperation. Thus, we find that the district judge was not clearly erroneous.
 
 III.
 
 8
 Unlike Pottinger, Franklin chose to plead guilty and testify for the government. During Franklin's testimony, the plea agreement between Franklin and the government was admitted into evidence. Pottinger's counsel objected to the introduction of this agreement, arguing that it was speculative and contained hearsay because it bound Franklin to tell the truth. The implication is that by introducing this promise to tell the truth, the credibility of the witness was improperly bolstered. Yet, we have previously held that plea agreements in this form are admissible evidence. United States v. Henderson, 717 F.2d 135 (4th Cir.1983). We held that these agreements may be introduced as long as they are not abused by the prosecution. In Henderson, we found that three facts indicated that no abuse had taken place and the facts in Henderson and the case at bar are the same on this issue: (1) the prosecutor did not imply through his questions that the government had a special knowledge of the veracity of the witness, (2) the trial judge instructed the jury to be cautious in evaluating testimony pursuant to a plea agreement, and (3) the promise of truthfulness was not disproportionately repeated or emphasized by counsel. Id. at 138. Thus, it was not error to introduce the plea agreement.
 
 IV.
 
 9
 Pottinger has made numerous other allegations of error, and we do not find that they merit full discussion. First, he claims that the prosecutor vouched for the credibility of Franklin during closing argument and commented on facts excluded from evidence. We have reviewed these claims and find that they are without merit. The statements referred to by Pottinger are either taken out of context or quite inconsequential.
 
 
 10
 Second, Pottinger sought in a motion in limine to exclude any evidence of a conspiracy that occurred outside the dates of April 1, 1989, to April 5, 1989. Pottinger argued that the evidence of a conspiracy outside those dates was insufficient to prove an ongoing conspiracy. The trial judge disagreed, finding the evidence sufficient. Pottinger has appealed this ruling, and we find that it was not clearly erroneous.
 
 Accordingly, Pottinger's conviction is
 
 11
 AFFIRMED.