914 F.2d 1492
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James R. PORTER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Julian SEIDEL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
JULIAN SEIDEL, Defendant-Appellee.
 Nos. 89-5677 to 89-5679.
 United States Court of Appeals, Fourth Circuit.
 Argued July 16, 1990.
Decided Sept. 25, 1990.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CR-88-380).
 Andrew Jay Graham, Kramon & Graham, P.A., Baltimore, Md., argued for Appellant Seidel;
 Kevin F. Arthur, James P. Ulwick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, on brief.
 Charles P. Lamasa, Baltimore, Md., argued for appellant Porter.
 Breckinridge Long Willcox, United States Attorney, Baltimore, Md., argued for appellee; Jefferson M. Gray, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED IN PART AND REVERSED IN PART.
 Before CHAPMAN and WILKINSON, Circuit Judges, and HAMILTON, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Julian M. Seidel and James R. Porter appeal their convictions in the United States District Court for the District of Maryland on counts of conspiracy (18 U.S.C. Sec. 371), mail fraud (18 U.S.C. Sec. 1341), and wire fraud (18 U.S.C. Sec. 1343). The United States appeals the district court's grant of Seidel's post-trial motion for judgment of acquittal on one count of tax evasion. We affirm defendants' convictions and reinstate the jury's verdict on the count of tax evasion.
 
 I.
 
 2
 This case arises from the growth and collapse of First Maryland Savings & Loan during the 1970's and 1980's. Seidel was First Maryland's Chief Executive Officer, President, Managing Officer, Chairman of the Board of Directors, and principal stockholder for the period examined at trial, while Porter served as Senior Vice President of Real Estate Lending, a position that made him First Maryland's chief lending officer. Like many savings and loans during the 1980's, First Maryland shifted away from traditional owner-occupied residential mortgages and began lending increasingly large amounts to developers of speculative commercial real estate ventures. When developers defaulted on their loans, First Maryland became insolvent and the state appointed a conservator and established a liquidation plan. An investigation by the FBI and IRS revealed that Seidel and Porter had been involved in fraud, document destruction, "wash" loan transactions, kickbacks and insider loans.
 
 
 3
 At trial, the jury convicted Seidel on one count of conspiracy, eight counts of mail fraud, nine counts of wire fraud and one count of tax evasion, and acquitted him on two counts of mail fraud and one count of tax evasion. The jury convicted Porter on one count of conspiracy, five counts of mail fraud and eight counts of wire fraud, while acquitting him on five counts of mail fraud and one count of wire fraud. The trial court granted Seidel's motion for judgment of acquittal as to his conviction for tax evasion, but denied Seidel's and Porter's other motions for judgments of acquittal or new trials. Seidel and Porter appeal their remaining convictions and the United States cross-appeals the district court's decision to acquit Seidel on the tax evasion count.
 
 II.
 
 4
 The trial court granted Seidel's post-trial motion for acquittal on the tax evasion count. That count charged Seidel with underreporting his taxable income for 1984 by failing to report a $300,000 kickback he received from Jerry Wolman. Seidel and Wolman both claimed that the $300,000 was merely a generous loan, but the jury rejected this claim and found Seidel guilty. We now direct the reinstatement of the jury's verdict.
 
 
 5
 In so doing, we apply a well-established standard of review: we must sustain the jury verdict finding Seidel guilty if there is "substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." Burks v. United States, 437 U.S. 1, 17 (1978) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)); see United States v. Steed, 674 F.2d 284, 286 (4th Cir.1982) (en banc). Evidence produced at trial indicated that: Wolman borrowed $1 million from First Maryland and returned $350,000 to Seidel; the $350,000 was divided into a $50,000 loan on which Seidel made payments and a $300,000 block on which Seidel made no payments; Wolman's security for the loan was significantly overvalued by approximately $300,000; neither Wolman nor Seidel could produce documentation of the loan agreements; and neither Wolman nor Seidel explained why they might have divided the $350,000 into two loans rather than one. Viewed in the light most favorable to the government, this evidence is sufficient to uphold the jury's conclusion that the $300,000 was a kickback and we therefore reinstate the conviction for tax evasion.
 
 III.
 
 6
 Porter argues that the evidence produced against him at trial was insufficient to allow a rational jury to convict him of conspiracy or fraud. Again we note the deferential standard of review, for we can only reverse a conviction on grounds of insufficient evidence where "the prosecution's failure is clear." Burks, 437 U.S. at 17. Review of the record reveals that Porter falsified monthly reports required by state regulators, that he continued to handle loan packages involving subordinated debentures of a type that state regulators had disapproved, that while being audited by federal examiners he asked assistant comptroller Joseph Tuohy to destroy a memo listing loans worth $1.8 million that had been made on worthless collateral, and that to finance a boat purchase he obtained a $79,000 loan from First Maryland that was neither presented to nor approved by the Loan Committee. This is sufficient evidence from which a jury could conclude that Porter was involved in a conspiracy to commit fraud and that he did commit such fraud. We therefore affirm Porter's convictions on these counts.
 
 IV.
 
 7
 Appellants also argue that the district court erred in allowing the government to introduce testimony from its witness Edward Dacy concerning Dacy's convictions and plea agreement. The district court held that this evidence was admissible under Fed.R.Evid. 403 and 607 and we find no reason to disturb its exercise of discretion.
 
 
 8
 Seidel and Porter claim that Dacy's testimony concerning his conviction and plea agreement so tainted the trial with an "aura of criminality" that the court abused its discretion in applying Fed.R.Evid. 403. As an initial matter, we observe that the existence of a plea or immunity agreement involving a government witness can work either for or against the government. United States v. Henderson, 717 F.2d 135, 137 (4th Cir.1983). Furthermore, the government's questioning was brief and limited, and the court gave a strong cautionary instruction immediately following Dacy's testimony. Defense counsel cross-examined Dacy to bring out evidence that Dacy's convictions were based on actions he took without the defendants' knowledge, assistance, or acquiescence, and the government did not emphasize the agreement in closing arguments. Under such circumstances, the government is entitled to elicit details of a witness' plea agreement, regardless of whether the defense intends to use it for impeachment purposes. See Henderson, 717 F.2d at 138.
 
 V.
 
 9
 Seidel and Porter also argue that the court erred in: applying the business records exception to the hearsay rule (Rule 803(6)); denying a motion for a new trial based on newly discovered evidence; denying a motion for a change of venue; refusing to instruct the jury on the meaning of "reasonable doubt"; and finding sufficient evidence to uphold Seidel's convictions. We find no merit in any of these claims and affirm the district court's judgment with respect to them.
 
 The judgment of the district court is
 
 10
 AFFIRMED IN PART AND REVERSED IN PART.