**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 96-4679

JAMES ALBERT BROWN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-95-443)

Submitted: March 24, 1998

Decided: April 7, 1998

Before MURNAGHAN, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Parks N. Small, Federal Public Defender, Columbia, South Carolina,
for Appellant. J. Rene Josey, United States Attorney, Nancy C.
Wicker, First Assistant United States Attorney, Mark C. Moore,
Assistant United States Attorney, Columbia, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

James Albert Brown appeals his convictions for conspiracy to possess with intent to distribute and to distribute heroin, cocaine, and cocaine base;**1** possession with intent to distribute and distribution of heroin, cocaine, and cocaine base;**2** and, money laundering.**3** He was sentenced to a term of life imprisonment. Finding no reversible error, we affirm.

In the first issue on appeal, Brown argues that the district court committed reversible error when it instructed the jury as follows on reasonable doubt:

> Now, while the Government's burden of proof is a strict or heavy burden, it is not necessary that the Government must prove Mr. Brown guilty beyond all possible doubt. The law only requires that the Government's proof exclude any reasonable doubt in your mind concerning Mr. Brown's guilt.

(Supp. JA at 37). The district court also instructed the jury that, "under the law, Mr. Brown is presumed to be innocent of the crimes alleged. And the burden is on the Government to prove to you beyond a reasonable doubt that he is guilty before you may find him so." (Id. at 36). The district court indicated that the Government bore this burden throughout the trial by stating, "[Mr. Brown] is not required to prove innocence or produce any evidence at all. The Government has the burden of proving guilt beyond a reasonable doubt, and if it fails to do so, you must acquit Mr. Brown." (Id. at 37). Brown challenges the "beyond all possible doubt" language that appears in the district

_____

**1 See** 21 U.S.C. § 846 (1994).
**2 See** 21 U.S.C. § 841(a)(1) (1994).
**3 See** 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957 (1994).

2

court's instructions. According to Brown, this attempt to define reasonable doubt lessened the Government's burden of proof. We find this argument to be without merit.

We have consistently instructed district courts not to define reasonable doubt.**4** However, the district court's decision to give a reasonable doubt instruction is not necessarily reversible error. In such a case, we must examine whether the instruction "taken as a whole . . . correctly conve[ys] the concept of reasonable doubt to the jury" and whether there is a "reasonable likelihood" that the jury understood the instructions to allow a conviction based on proof insufficient to meet the Winship**5** standard. **6**

We have previously found that the "beyond all possible doubt" phrase, as challenged in this appeal, is not an attempt on the part of the district court to define the concept of reasonable doubt and that it gives an accurate description of the Government's burden in a criminal proceeding.**7** We reject Brown's argument that Adkins should be revisited in light of the United States Supreme Court's pronouncements in Sullivan v. Louisiana, 508 U.S. 275 (1993), and Cage v. Louisiana, 498 U.S. 39 (1990). In Sullivan and Cage, the Court found unconstitutional the trial courts' nearly identical definitions of the reasonable doubt standard because they allowed for"a finding of guilt based on a degree of proof below that required by the Due Process Clause."**8** However, Sullivan and Cage are both inapposite to this case because they addressed the trial courts' errors in misdefining and thereby diluting the reasonable doubt standard, whereas, in this case, no attempt was made to define reasonable doubt. Moreover, neither of these cases included instructions that contained the "beyond all possible doubt" language as found in the present case and in Adkins; therefore, we find that neither Sullivan nor Cage serve to vitiate or

_____

**4 See United States v. Reives**, 15 F.3d 42, 45 (4th Cir. 1994).
**5 See In re Winship**, 397 U.S. 358, 364 (1970) (holding that the government must prove beyond a reasonable doubt every element of a charged offense).

**6 Victor v. Nebraska**, 511 U.S. 1, 5-6 (1994).
**7 See United States v. Adkins**, 937 F.2d 947, 950 (4th Cir. 1991).
**8 Cage**, 498 U.S. at 41; see Sullivan, 508 U.S. at 277.

3

undermine the rationale in Adkins. Further, contrary to Brown's assertions, we find that the district court's instructions on reasonable doubt were neither misleading nor confusing.[9]

Finally on this issue, we reject Brown's contention that the district court's reasonable doubt instructions are unconstitutional in light of United States v. Colon-Pagan, 1 F.3d 80, 81 (1st Cir. 1993). In Colon-Pagan, the district court erroneously instructed the jury that the government was required to prove guilt beyond a reasonable doubt, which "did not mean guilt `beyond all possible doubt.' Rather, that proof meant `proof of such a convincing character that a person . . . would be willing to rely and act upon it.'"[10] The First Circuit took no issue with the "beyond all possible doubt" phrase, but found plain error with the district court's definition of reasonable doubt as proof that a person "would be willing to rely and act upon."[11] The court found that this definition may have allowed the jury to convict the defendant on the basis of evidence "no stronger than might reasonably support a decision to go shopping or to a movie" or any of life's ordinary decisions.[12]

When read in context with the entire jury instruction, the district court here repeatedly referred to the Government's obligation to prove each element of the charges beyond a reasonable doubt; therefore, there was no reasonable likelihood that the jury misunderstood the instruction to allow a conviction based on insufficient proof.[13] Accordingly, we reject Brown's challenge to the district court's instruction on reasonable doubt.

Next, Brown claims that there was insufficient evidence to convict him of three counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957 (1994). At trial, the Government presented evidence that on three separate days Brown exchanged more than $10,000 for the pur-

_____

[9] **See United States v. Love**, 767 F.2d 1052, 1060 (4th Cir. 1985).
[10] **Colon-Pagan**, 1 F.3d at 81.
[11] **Id.**
[12] **Id.**
[13] **See Victor**, 511 U.S. at 6; Reives, 15 F.3d at 45.

4

chase of several automobiles. James Wannamaker, an employee of the South Carolina Department of Transportation responsible for auctioning surplus or used state-owned automobiles, testified that on July 29, 1992, Brown purchased nine cars for $27,195; on September 2, 1992, Brown purchased eighteen cars for $50,190.50; on October 7, 1992, Brown purchased four cars, spending $9135; and, on November 18, 1992, Brown purchased six cars, spending $20,272.50.[14]

In reviewing whether the evidence was sufficient to convict a defendant, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[15] The jury is responsible for weighing the credibility of the evidence and resolving any apparent conflicts.[16]

The statute under which Brown now challenges his convictions provides:

> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).[17]

Brown does not dispute that he made these purchases or that the property was derived from "specified unlawful activity" as defined by the

---

[14] Only the July 29, September 2, and November 18, 1992 purchases, in which the total amount spent exceeded $10,000, were charged as violations of 18 U.S.C. § 1957.

[15] **Jackson v. Virginia**, 443 U.S. 307, 319 (1979); United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994).

[16] **See Murphy**, 35 F.3d at 148.

[17] 18 U.S.C. § 1957(a) (1994); United States v. Campbell, 977 F.2d 854, 859 (4th Cir. 1992). "Monetary transaction" is defined as "the deposit, withdrawal, transfer, exchange . . . of funds or a monetary instrument . . . by, through, or to a financial institution," and "criminally derived property" is defined as "property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(1), (2) (1994); see United States v. Moore, 27 F.3d 969, 976 (4th Cir. 1994).

statute. Brown's argument on appeal is that because he bid on each car separately, each car purchased was a separate and distinct monetary transaction. Because none of the cars individually cost more than $10,000, Brown contends that he did not engage in a monetary transaction with property of a value greater than $10,000.[18] He argues that it was improper for the Government to aggregate the total amount spent on a particular day to circumvent the jurisdictional value requirement and cites United States v. Denemark , 779 F.2d 1559, 1563 (11th Cir. 1986), for support. However, the facts of Denemark, a structuring case under 18 U.S.C. § 1001, are far removed from this case and we find the case to be unpersuasive.

Here, the district court properly instructed the jury that if they found that each car purchased amounted to a separate monetary transaction they could not add the value of the property involved in the separate transactions together and, if so, the value element of the offense could only be satisfied if the value of the property in a single transaction was greater than $10,000. However, if the jury found that the total number of cars purchased on a particular day constituted a single monetary transaction, they could then add the value of the property together to determine if the total amount exceeded $10,000.

Viewing the evidence in the light most favorable to the Government, we find that the evidence was more than sufficient for the jury to conclude, as it did, that Brown's purchase of several automobiles with one lump-sum payment amounted to a single monetary transaction. Further, because there was more than ample evidence that the value of each of the monetary transactions exceeded the $10,000 jurisdictional amount, we find no ambiguity in the statute's application to Brown's conduct and deny his request for lenity.[19] Accord-

_____

[18] The Government concedes that Brown bid on each car separately but maintains that since he paid for the cars at the end of the auction in a lump-sum payment, there was but a single monetary transaction.
[19] See United States v. Jenkins , 58 F.3d 611, 613 (11th Cir. 1995) (concluding the rule of lenity required section 1957 be construed narrowly because of its ambiguity in addressing "whether[it] applies only to single transactions exceeding $10,000 or includes a series of transactions that total more than $10,000." The allegation of error was that the court "erred in including kickbacks of less than $10,000.").

ingly, we affirm Brown's convictions under 18 U.S.C.§ 1957 as properly supported by sufficient evidence.

In Brown's final claim he asserts that the Government improperly vouched for the credibility of six witnesses who were unindicted co-conspirators of Brown by eliciting details regarding the truthfulness provisions of their plea agreements on direct examination. Brown also suggests that the district court erred by allowing testimony that tended to show that several of the witnesses had performed their agreement satisfactorily and had reaped its rewards. And Brown asserts that when the district court instructed the jury on the details of guideline sentencing, including how downward departures are determined, it impermissibly suggested that the court found these witnesses' testimony to be credible. We disagree.

Brown only challenged the admission of two plea agreements; therefore, we review the admission of those plea agreements for an abuse of the district court's discretion,[20] and review the admission of the remaining plea agreements for plain error.[21] Further, we review Brown's claim that the district court itself improperly bolstered the credibility of the Government's witnesses for abuse of discretion.[22]

We have generally held that it is error for the Government to bolster or vouch for its own witnesses.[23] However, the Government is allowed to explain its investigation, procedures or relationship with its witnesses. This includes presenting evidence of the details of the witnesses' plea agreements and their promises to testify truthfully.[24]

Here, we find that the Government neither bolstered nor vouched

_____

[20] **See United States v. Henderson** , 717 F.2d 135, 138 (4th Cir. 1983).
[21] **See** Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993).
[22] **See United States v. Russell** , 971 F.2d 1098, 1107 (4th Cir. 1992).
[23] **See United States v. Samad**, 754 F.2d 1091, 1100 (4th Cir. 1984).
[24] **See Henderson**, 717 F.2d at 138 (4th Cir. 1983) (no error in Government's eliciting evidence of promise to testify truthfully made in plea agreement, whether or not defense intends to use plea agreement to impeach witnesses' credibility).

for the credibility of its witnesses. The Government did not derive any improper advantage from the witnesses' promises to be truthful nor did it imply to the jury that it possessed special knowledge of the testifying co-conspirators' veracity. Further, the Government gave no personal assurances that its witnesses were trustworthy.[25] Finally, the district court's explanation of how the sentencing guidelines deals with downward departures in no way suggested to the jury that it found any of the witnesses' testimony credible.

Therefore, finding no reversible error, we affirm Brown's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**25** **See United States v. Lewis**, 10 F.3d 1086, 1089 (4th Cir. 1993).

8