UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 97-4005

DOUGLAS M. LINDSAY, II,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
G. Ross Anderson, Jr., District Judge.
(CR-96-327)

Submitted: February 10, 1998

Decided: April 21, 1998

Before WILKINS, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Howard William Paschal, Jr., MILLER & PASCHAL, Greenville,
South Carolina, for Appellant. J. Rene Josey, United States Attorney,
Beth Drake, Assistant United States Attorney, Columbia, South Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Douglas McArthur Lindsay, II, appeals from his conviction and resulting life sentence for conspiring to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (1994). Finding no reversible error, we affirm the conviction and sentence.

I.

The government's evidence showed that Lindsay was a leader and organizer in a drug conspiracy. The government based its case on the testimony of eight witnesses. Four of these witnesses were named co-defendants who entered into plea agreements with the government. These agreements all provided for downward departures from sentencing in exchange for truthful cooperation.

The first witness called by the government was Ralph Johnson, who was not a named co-defendant but was a source of drugs for the conspiracy. Johnson had previously testified before a grand jury about Lindsay's co-defendants. The government questioned Johnson about that testimony, and brought out the fact that as a result of that testimony, Lindsay's other four co-defendants pleaded guilty.

The government called as its second witness Thomas Wingard. On direct examination, the government read aloud the "truth-telling" portions of Wingard's plea agreement and questioned Wingard about his obligations to testify truthfully.

As its third witness the government called Jermaine Lindsay, another co-defendant. The government did not read aloud the truth telling provisions of Jermaine Lindsay's plea agreement, but did question him about his obligations under the agreement to testify truthfully. Over the objection of the defense, the government at the close of its case moved the Johnson, Wingard, and Jermaine Lindsay plea agreements into evidence.

Appellant Lindsay testified in his own defense. He denied ever having sold drugs or being in the drug business. On cross examination, the government questioned Lindsay about a conversation he had with police in 1991 concerning an unrelated incident. Lindsay's brother was arrested on drug distribution charges, and Lindsay came to the jail voluntarily to talk with the arresting officer about bail for his brother. During the conversation, the officer told Lindsay that neither he nor his brother needed to be dealing drugs. Lindsay did not deny drug dealing, but replied that the officer did not "have to worry about [him] anymore."

The jury returned a guilty verdict. Between the trial and sentencing hearing, Lindsay's trial counsel was indicted for obstruction of justice. This indictment was unrelated to Lindsay's case and counsel's license was not then suspended. Prior to the beginning of the sentencing hearing, the trial judge met with the attorneys and Lindsay to discuss whether Lindsay's counsel should continue his representation. Lindsay agreed to proceed with the same counsel. Based on the trial testimony and testimony at the sentencing hearing the district court found that Lindsay distributed over one kilogram of cocaine base. The court fixed Lindsay's offense level at 42 and sentenced him to life imprisonment.

II.

Appellant contends that allowing the government to elicit testimony from Johnson concerning Lindsay's non-testifying co-defendants' guilty pleas was error. Specifically, Lindsay asserts that the fact that co-defendants have pled guilty is never admissible as substantive evidence.

At the outset, we note that evidentiary questions are reviewed for abuse of discretion. See United States v. D'Anjou, 16 F.3d 604, 610 (4th Cir. 1994). Allowing evidence of the guilty pleas of the non-testifying co-defendants was error. See United States v. Blevins, 960 F.2d 1252, 1260 (4th Cir. 1992). However, any error in allowing evidence of the non-testifying co-defendants' guilty pleas was harmless and does not warrant reversal of Lindsay's conviction. See Blevins, 960 F.2d at 1264-65.

3

The prosecution mentioned the non-testifying co-defendants' guilty pleas once on redirect examination of Johnson in an attempt to rehabilitate his credibility, and once on cross-examination of Lindsay. The government did not argue the point in opening or closing argument. When the government mentioned the guilty pleas on redirect examination of Johnson, the trial judge instructed the jury that there was to be no insinuation that Lindsay was guilty because his co-defendants pleaded guilty. Further, prior to deliberations the trial judge instructed the jury that they were to consider the evidence against Lindsay only, and not to consider the cases against his co-defendants in determining Lindsay's guilt. See id. at 1260; United States v. De La Vega, 913 F.2d 861, 866-67 (11th Cir. 1990). Additionally, Johnson was only one of six government witnesses, all of whom testified that they had either sold drugs to or sold drugs for Lindsay. Thus, although it was error to allow evidence of the non-testifying co-defendants' guilty pleas, this court is satisfied beyond a reasonable doubt that the jury's verdict would not have been different has the "minimal discussion of the non-testifying co-defendants' guilty pleas not taken place." See Blevins, 960 F.2d at 1265.

III.

Lindsay contends that the district court erred in admitting Johnson's testimony regarding the guilty pleas of Lindsay's testifying co-defendants, Thomas Wingard and Jermaine Lindsay. Because Lindsay had ample opportunity to cross-examine these defendants, and because evidence of their pleas was admissible on their direct examination in anticipation of their impeachment, such reference was not error. See United States v. Withers, 100 F.3d 1142, 1145-46 (4th Cir. 1996) (noting that in Blevins, this court "expressed doubt that the mention of a guilty plea by a testifying co-defendant . . . would be error since the defendant would have the opportunity to cross-examine the witness," and finding similar mention of plea agreement harmless), cert. denied, 65 U.S.L.W. 3631 (U.S. Mar. 17, 1997) (No. 96-7884); Blevins, 960 F.2d at 1260-61 n.3.

Lindsay also asserts that the district court erred in admitting the plea agreements of Wingard and Jermaine Lindsay. Lindsay asserts that admitting the plea agreements allowed the government to bolster and vouch for their credibility. Although it is error for the government

4

to vouch for or bolster its own witnesses, see United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997), plea agreements of testifying co-defendants are admissible in the government's case in chief, and do not constitute improper vouching or bolstering. See United States v. Henderson, 717 F.2d 135, 138 (4th Cir. 1983).

IV.

Lindsay contends that the trial court erred in allowing the introduction of his 1991 statement made to a police officer after the arrest of Lindsay's brother on drug charges, that law enforcement did not have to "worry about [him] anymore." Lindsay asserts that admission of the statement was error because at the time the statement was made, he was in custodial interrogation and had not been given Miranda warnings.

Lindsay came to the police station voluntarily to speak with officers about posting bond for his brother. Officers interviewed him about his brother, but did not place any restrictions on his freedom to leave. Thus, Lindsay was not subject to custodial interrogation at the time of his 1991 statement, and Miranda warnings were unnecessary. See Stansbury v. California, 511 U.S. 318, 322-23 (1994); United States v. Jones, 818 F.2d 1119, 1122 (4th Cir. 1987).

V.

Lindsay contends that the district court erroneously found him responsible for over one kilogram of cocaine base. The government put forth several witnesses to testify to the quantity of cocaine base for which Lindsay was responsible. This testimony as a whole indicated that Lindsay was responsible for at least 1004 grams of cocaine base. A review of the record finds this determination amply supported by the evidence presented, and thus it was not clearly erroneous for the court to so find. See United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992).

VI.

Lindsay's last contention is that the district court erred in allowing defense counsel to continue to represent Lindsay at the sentencing

5

hearing after counsel had been indicted for obstruction of justice. At the outset of the sentencing hearing, the district court adjourned to chambers to confer with the prosecutor, defense counsel, and Lindsay regarding the criminal charges recently made against defense counsel. Those charges did not relate to Lindsay's case and had not resulted in defense counsel's suspension or discipline. Only after Lindsay indicated that he was content to have defense counsel continue to represent him did the district court proceed with the sentencing.

In maintaining on appeal that his counsel's indictment created a "possible conflict," Lindsay offers no evidence that the indictment prejudiced him. Indeed, Lindsay does not even argue that the indictment affected his attorney's performance at sentencing or caused the judge to sentence him more harshly. We require defendants to demonstrate that such a conflict "result[ed] in an adverse effect." United States v. Tatum, 943 F.2d 370, 375-76 (4th Cir. 1991). Because Lindsay offers no support for his proposition that he was prejudiced by trial counsel's continued representation, his contention that the district court erred in permitting defense counsel's continued representation necessarily fails.

VII.

We affirm Appellant's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED