<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-5085**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

O'BENSON SESERE, a/k/a O.B., a/k/a Obenson Sesere,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Glen E. Conrad, District Judge. (5:06-cr-00041-gec-10)

Argued: December 7, 2010          Decided: February 7, 2011

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant. Jeb Thomas Terrien, OFFICE OF THE UNITED STATES ATTORNEY, Harrisonburg, Virginia, for Appellee. **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant O'Benson Sesere seeks relief from his convictions and sentence in the Western District of Virginia on four drug offenses involving cocaine base ("crack cocaine" or "crack"). At the conclusion of a jury trial in Harrisonburg, Sesere was convicted of conspiracy to distribute cocaine base (21 U.S.C. § 846), plus three separate distribution offenses (21 U.S.C. § 841(a)). On appeal, he pursues three contentions of error: (1) that the court erred in denying judgment of acquittal on one of the distribution offenses (the "Sufficiency Issue"); (2) that the court erroneously permitted the prosecutors to bolster the credibility of two of their witnesses (the "Bolstering Issue"); and (3) that the court erred in its drug quantity finding at sentencing (the "Sentencing Issue"). As explained below, we reject each of these contentions and affirm.

I.

A.

On September 6, 2006, Sesere and eleven codefendants were charged in a multi-count indictment.[1] Specifically, Sesere was

---

[1] Because we are reviewing for sufficiency of the evidence, we must view the evidence in "the light most favorable to the Government." See United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005). This factual recitation is set forth in that light.

charged with conspiracy to distribute fifty grams or more of crack cocaine (Count One), plus seven counts of distribution and possession with intent to distribute (Counts Twenty-One through Twenty-Seven). Four of the distribution charges were subsequently dismissed by the United States Attorney, and Sesere was tried and convicted in August 2009 on the four remaining offenses, that is, Counts One, Twenty-One, Twenty-Two, and Twenty-Four.[2]

B.

The trial evidence reflected that, from 2004 to 2006, the Northwest Virginia Regional Drug Task Force was involved in an extensive investigation of crack and powder cocaine distribution in the Winchester, Virginia area. The focus of the investigation was an area of Winchester known as "the Block," which apparently served as an open-air drug market. At Sesere's trial, the prosecution presented multiple witnesses and established that Sesere was a street-level crack dealer on the Block, and that he also worked with other drug dealers to provide security for illicit drug businesses and to obtain

---

[2] On the basis of his four convictions, Sesere faced a statutory maximum of life plus eighty years in prison. See 21 U.S.C. §§ 841(b)(1)(A) (Count One: not less than ten years or more than life); 841(b)(1)(B) (Count Twenty-Two: not less than five years or more than forty); 841(b)(1)(C) (Counts Twenty-One and Twenty-Four: not more than twenty years).

substantial quantities of crack for distribution. This evidence provided the proof underlying Sesere's conspiracy conviction on Count One, and the sufficiency of that evidence is not contested.

Along with Count One, Sesere was convicted on three substantive drug offenses — Counts Twenty-One, Twenty-Two, and Twenty-Four. Count Twenty-One was a distribution offense that stemmed from a "controlled buy" made by the Task Force on the Block on January 11, 2006, when a cooperating informant purchased approximately .9 grams of crack from Sesere. Count Twenty-Two — a possession with intent to distribute offense — arose from a series of events that occurred the very next day, January 12, 2006, when the Task Force executed a search warrant at the Winchester apartment of Sesere's girlfriend, Tiffany Sloane. From the apartment (hidden under a sofa), the officers seized a pill bottle containing approximately 24.3 grams of crack cocaine, and Sesere later admitted to Sloane that the crack in the bottle belonged to him.

The substantive offense of most significance in this appeal is Count Twenty-Four, which stemmed from an incident on February 18, 2006, when an undercover officer on the Block paid $50 in cash to Sesere for a small quantity of an off-white substance. Immediately after this transaction, several other officers sought to apprehend Sesere, who fled on foot in an effort to

4

escape. As Sesere ran from his pursuers, he tried to elude them by scaling a residential fence in a backyard. The pursuing officers caught up with Sesere, however, and ordered him off the fence and onto the ground. Sesere complied with their instructions and was apprehended. A K-9 unit thereafter searched the yard of the residence beyond the fence, and found an empty cigar tube and four pieces of crack cocaine, weighing in the aggregate approximately one-third of a gram. Three of the four pieces of crack were found on the grass just beyond the fence, and the fourth was found on an outdoor table. The pieces of crack found on the grass were about three to four feet from the fence, and the table was about the same distance from the fence. Task Force Officer Swartz testified that the locations where the pieces of crack were found, particularly those lying on the grass, indicated that all four pieces had been recently thrown over the residential fence that Sesere had attempted to scale in his escape effort.[3]

---

[3] Because the substance that Sesere sold the undercover officer on February 18, 2006, was neither crack cocaine nor any other controlled substance, Count Twenty-Four was tried as a possession with intent to distribute offense, on the premise that Sesere had possession of the pieces of crack found beyond the fence with the intent to distribute them. The Sufficiency Issue relates solely to Count Twenty-Four.

C.

On the Bolstering Issue — the sole appellate contention that relates to all of Sesere's convictions — there are two pertinent prosecution witnesses, Celeste Joseph and Tiffany Sloane.  Joseph was a drug dealer who had operated on the Block and Sloane was Sesere's girlfriend.  Joseph and Sloane were also convicted codefendants of Sesere, and they had agreed to testify against him.  An exchange between the prosecutor and Joseph on direct examination — emphasized by Sesere in this appeal — went as follows:

> [Prosecutor]:  [You have been convicted] of conspiracy to distribute 50 grams or more of crack cocaine[?]
>
> [Joseph]:  Yes.
>
> *     *     *
>
> Q:  Do you have any other convictions for felonies, any offenses punishable by more than a year in jail?
>
> [Joseph]:  No.
>
> [Defense Counsel]:  I object . . . .

J.A. 438.[4]  After making his objection, Sesere's lawyer asserted to the court that the prosecutor was improperly questioning Joseph, and argued that making such inquiries on direct examination constituted "improperly vouching" for the witness.

---

[4] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Id. at 438-39.  The court overruled the objection, however, explaining that no improper questioning had occurred because the prosecutor had simply asked Joseph about his "objective record," as opposed to whether he had "ever been in trouble."  Id. at 439.

A similar exchange occurred between the prosecutor and Sloane when she was on direct examination.  When the prosecutor asked Sloane if she had ever been convicted of a felony, she replied "yes."  J.A. 464.  Sloane then explained that she had been convicted of a drug conspiracy offense and had served prison time.  The prosecutor also asked Sloane if she had been convicted of any other felonies or a "misdemeanor for moral turpitude; lying, cheating or stealing."  Id.  Sloane replied "no" and Sesere's lawyer unsuccessfully renewed the objection he had interposed during Joseph's testimony.  Id.

D.

On August 19, 2009, the jury returned a guilty verdict against Sesere on all four offenses.  Sesere thereafter filed motions for judgment of acquittal and a new trial, pursuant to Federal Rules of Criminal Procedure 29 and 33.[5]  More

_____

[5] Rule 29 provides that, at both the close of the evidence and after the jury returns its verdict, the court may consider whether the evidence is sufficient to sustain a conviction. Rule 33 provides that the court may grant a new trial in the proper circumstances.

specifically, Sesere sought judgment of acquittal on Count Twenty-Four, arguing that the evidence against him was insufficient as a matter of law. By its Memorandum Opinion of October 9, 2009, the district court denied Sesere's motions, explaining that there was sufficient evidence to support all the convictions. See United States v. Sesere, No. 5:06-cr-00041, (W.D. Va. Oct. 9, 2009) (the "Opinion").[6] On Count Twenty-Four, the court explained that, "[b]ecause there was substantial evidence for the jury to find Sesere guilty beyond a reasonable doubt as to Count Twenty-Four, the court will deny the defendant's motion." Id. at 8.[7]

Sesere's presentence report (the "PSR") recommended that Sesere be attributed a total of 1,132 grams of crack cocaine — for a base offense level of 34 under the 2008 Guidelines — and that the court apply an advisory Guidelines range of 168 to 210 months. Sesere appeared for sentencing on November 12, 2009, and his lawyer objected to the quantity of crack being

---

[6] The Opinion can be found at J.A. 559-66.

[7] In its Count Twenty-Four sufficiency analysis, the district court emphasized the testimony of two witnesses. See Opinion 7-8. Officer Swartz established that the person who attempted to flee over the fence was Sesere and that at least $400 in cash was recovered from him. Swartz also said that the table on which the crack was found was no more than three to four feet from the fence. Officer Spaid observed crack lying on the ground and on the table.

8

attributed to him in the PSR. Sesere argued that the only evidence on drug quantity had been presented at trial by Joseph, and that the evidence supported the proposition that Sesere had possessed only ten to fifteen ounces (or approximately 280 to 420 grams) of crack.[8] The prosecutor responded to the drug quantity objection by asserting that the trial record provided ample support for the proposition that Sesere was responsible for the quantity of crack (1,132 grams) attributed to him in the PSR. The prosecutor asserted that, on the evidence of several trial witnesses, including Sloane, Sesere had "a few times" made profits of over $2000 in a single day, and even up to $5000 on a really good day. J.A. 471.[9]

After considering the drug quantity issue and the relevant evidence, the sentencing court overruled Sesere's objection and attributed to him at least 500 grams of crack cocaine, the threshold quantity necessary for a base offense level of 34. In

---

[8] Pursuant to section 2D1.1(c)(3) of the Guidelines, the possession of at least 500 grams but less than 1.5 kilograms of crack warrants a base offense level of 34. If Sesere had been attributed a quantity of crack of at least 150 but less than 500 grams, the provisions of section 2D1.1(c)(4) would have applied, yielding a base offense level of 32. Pursuant to a base offense level of 32 and a criminal history category of II (as determined by the PSR), Sesere's advisory Guidelines range would have been reduced to 135 to 168 months, rather than 168 to 210 months.

[9] The trial evidence was that an ounce (28.3 grams) of crack typically sold on the Block for $900 to $1500.

9

so ruling, the court concluded that Sesere "certainly understood that the endeavor, the collaboration between the group [Sesere and his coconspirators], was responsible for at least 500 grams of crack cocaine." J.A. 592.

Sesere thereafter filed a timely notice of appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

We review de novo a district court's denial of a motion for judgment of acquittal. See United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005). In our review, "we are obliged to sustain a guilty verdict if, viewing the evidence in the light most favorable to the Government, it is supported by 'substantial evidence'" — substantial evidence being that which a "reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id.; see also United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008) (observing that "[w]e consider both circumstantial and direct evidence"). On the other hand, we review a trial court's evidentiary rulings for abuse of discretion. See United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007). Finally, factual determinations underlying a court's imposition of sentence must be supported by a

10

preponderance of the evidence, and are not to be overturned unless they are clearly erroneous. See United States v. Jeffers, 570 F.3d 557, 570 (4th Cir. 2009).

III.

A.

On the Sufficiency Issue, Sesere contends that there was insufficient trial evidence to warrant his § 841(a) conviction on Count Twenty-Four — in which he attempted to escape from the pursuing officers by climbing a backyard fence. Specifically, Sesere contends that there was no evidence that the crack found in the yard beyond the fence was ever in his possession, and that he was therefore entitled to judgment of acquittal on that charge. To the contrary, however, there was ample evidence — albeit primarily circumstantial — that the crack cocaine found beyond the fence had been in Sesere's possession during his flight from the police officers, and that he had possessed the crack with the intention of distributing it. Officer Swartz and other trial witnesses explained how Sesere ran from the authorities after engaging in an undercover transaction on the Block, and how he sought to scale the fence to escape. Swartz also explained how the pieces of crack beyond the fence were found — three of them on top of the grass about three to four feet from the fence and the fourth on a nearby table — and that

11

the circumstances indicated that they had been recently thrown over the fence. Officer Spaid also observed the pieces of crack lying on the grass and on the table.

Viewing the evidence in the light most favorable to the prosecution — as we must — the jury was entitled to conclude that Sesere had been in possession of the crack cocaine found beyond the fence, and that he had possessed it with the necessary intent. As a result, there was sufficient evidence to support Sesere's § 841(a) conviction on Count Twenty-Four, and the district court properly denied Sesere's motion for judgment of acquittal.

B.

Turning to the Bolstering Issue pursued by Sesere, we first recognize that his trial lawyer probably was incorrect in characterizing the questioning of Joseph and Sloane as "improper vouching." Sesere more appropriately asserts on appeal that the improper evidentiary practice being challenged was "improper bolstering." The bolstering of a witness has been characterized as "the practice of offering evidence solely for the purpose of enhancing a witness's credibility before that credibility is attacked." See United States v. Lindemann, 85 F.3d 1232, 1242 (7th Cir. 1996). Improper vouching, on the other hand, occurs when a lawyer indicates — either in questioning or in argument — his personal belief in the credibility or honesty of a

12

witness.  See United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993).  Thus, "improper bolstering" is the more appropriate term for the evidentiary challenges interposed by Sesere's lawyer at trial.

In any event, Sesere faces an uphill battle on the Bolstering Issue — which we review for abuse of discretion only — primarily because Rule 607 of the Federal Rules of Evidence gives any party the right to impeach its own witnesses.  See Fed. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."). Consistent with the foregoing, we have specifically recognized that "[a] party may impeach its own witness [under Rule] 607." United States v. Henderson, 717 F.2d 135, 137 (4th Cir. 1983); see also Util. Control Corp. v. Prince William Constr. Co., 558 F.2d 716, 720 (4th Cir. 1977) (recognizing that "the effect of Rule 607 is to sweep away the traditional rule that a party may not impeach his own witness").  Thus, as Rule 607 provides, and as the courts have recognized, the questioning challenged by Sesere was plainly permissible, and the trial court cannot be said to have abused its discretion in ruling as it did.

C.

In his final appellate contention — the Sentencing Issue — Sesere contends that the sentencing court clearly erred in attributing to him a drug quantity of at least 500 grams of

13

crack cocaine, thereby sentencing him pursuant to section 2D1.1(c)(3) of the Guidelines, which provides for a base offense level of 34. Sesere maintains that the quantity of crack properly attributable to him was no more than ten to fifteen ounces (approximately 280 to 420 grams), and that he therefore should have been sentenced pursuant to section 2D1.1(c)(4), which directs a base offense level of 32.

Section 1B1.3(a) of the Guidelines provides that the base offense level "shall be determined on the basis of" the offense of conviction and relevant conduct. In making that determination, the "[s]entencing judge[] may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict." United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008). And we will not overturn such factual findings unless they are clearly erroneous. See United States v. Jeffers, 570 F.3d 557, 570 (4th Cir. 2009). In terms specific to a § 846 conspiracy conviction, the drug quantity attributable to a defendant is the quantity involved in the conspiracy that was reasonably foreseeable to the defendant. See USSG § 1B1.3(a)(1); United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999) (explaining that "the district court may attribute to the defendant the total amount of drugs involved in

14

the conspiracy, provided the drug quantities were reasonably foreseeable to the defendant and are within the scope of the conspiratorial agreement" (citing United States v. Irvin, 2 F.3d 72, 77 (4th Cir. 1993) (Wilkins, J.)).

At sentencing, the district court found that Sesere "certainly understood that the endeavor, the collaboration between the group [Sesere and his coconspirators], was responsible for at least 500 grams of crack cocaine." J.A. 592. At trial, the prosecutors presented at least eight witnesses who testified about Sesere's drug dealing activities on the Block. Joseph, for example, confirmed that between January and June of 2006 he had frequently sold Sesere 84 grams of crack per week, totalling more than 280 to 420 grams. Sloane, Sesere's girlfriend, testified that Sesere had "a few times" made $2000 in a day selling crack, and up to $5000 on a good day. J.A. 471. Finally, Mannot Lusca, a drug dealer on the Block, related that on two or three occasions Sesere had pooled his money with other drug dealers to buy "bricks" of cocaine (a brick being worth approximately $14,400 dollars). Put simply, the sentencing court's finding that at least 500 grams of crack cocaine was properly attributable to Sesere for sentencing purposes was not clearly erroneous.

IV.

Pursuant to the foregoing, we reject the appellate contentions pursued by Sesere and affirm his convictions and sentence.

<u>AFFIRMED</u>