FILED: April 3, 2008

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 03-4389
(CR-02-548)


UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

JOHNNY FRANK DAVIS,

                                        Defendant - Appellant.

                        ─────────────────

                        No. 03-4406

                        ─────────────────


UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

DEMETRIUS MONQUITE GREEN, a/k/a Meech,

                                        Defendant - Appellant.

                        ─────────────────

                        No. 04-4095

                        ─────────────────


UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

ANTONIO OWENS, a/k/a Tonio,

Defendant - Appellant.

---

No. 04-4137

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TANESHA BANNISTER,

Defendant - Appellant.

---

No. 04-4164

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DONALD EDWARD BYRD,

Defendant - Appellant.

---

No. 04-4176

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FURMAN BENJAMIN QUATTLEBAUM,

Defendant - Appellant.

---

No. 04-4185

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHNNY WILLIAM COOPER, JR., a/k/a Buck,

Defendant - Appellant.

---

No. 04-4205

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHRISTOPHER TOBY HAYES,

Defendant - Appellant.

No. 04-4206

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DARREN WHITE, a/k/a Doctor, a/k/a Coolie,

Defendant - Appellant.

No. 04-4238

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARQUEL DUSHUAN RILEY, a/k/a Mark Riley,

Defendant - Appellant.

No. 04-4239

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

4

versus

ANTHONY KEITH WILSON,

                                   Defendant - Appellant.

_____

No. 04-4264

_____

UNITED STATES OF AMERICA,

                                   Plaintiff - Appellee,

        versus

DAVID KEITH MILES,

                                   Defendant - Appellant.

_____

No. 04-4335

_____

UNITED STATES OF AMERICA,

                                   Plaintiff - Appellee,

        versus

JOSEPH TROY MCCONNELL,

                                   Defendant - Appellant.

———————————————

No. 04-4404

———————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ARMAND A. HAMMOND,

Defendant - Appellant.

———————————————

No. 04-4440

———————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM EDWARDS,

Defendant - Appellant.

## O R D E R

The court amends its opinion filed March 17, 2008, as follows:

On Page 40, section 4., the fourth sentence, the words "50 kilograms of cocaine" should be corrected to read "5 kilograms of cocaine."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

7

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-4389**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHNNY FRANK DAVIS,

Defendant - Appellant.

---

**No. 03-4406**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DEMETRIUS MONQUITE GREEN, a/k/a Meech,

Defendant - Appellant.

---

**No. 04-4095**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTONIO OWENS, a/k/a Tonio,

                                        Defendant - Appellant.

————————————

**No. 04-4137**

————————————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

TANESHA BANNISTER,

                                        Defendant - Appellant.

————————————

**No. 04-4164**

————————————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

DONALD EDWARD BYRD,

                                        Defendant - Appellant.

————————————

**No. 04-4176**

————————————

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

2

versus

FURMAN BENJAMIN QUATTLEBAUM,

Defendant - Appellant.

─────────────────

**No. 04-4185**

─────────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHNNY WILLIAM COOPER, JR., a/k/a Buck,

Defendant - Appellant.

─────────────────

**No. 04-4205**

─────────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHRISTOPHER TOBY HAYES,

Defendant - Appellant.

3

---

**No. 04-4206**

---

UNITED STATES OF AMERICA,

                                                 Plaintiff - Appellee,

        versus

DARREN WHITE, a/k/a Doctor, a/k/a Coolie,

                                                 Defendant - Appellant.

---

**No. 04-4238**

---

UNITED STATES OF AMERICA,

                                                 Plaintiff - Appellee,

        versus

MARQUEL DUSHUAN RILEY, a/k/a Mark Riley,

                                                 Defendant - Appellant.

---

**No. 04-4239**

---

UNITED STATES OF AMERICA,

                                                 Plaintiff - Appellee,

4

versus

ANTHONY KEITH WILSON,

Defendant - Appellant.

---

**No. 04-4264**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID KEITH MILES,

Defendant - Appellant.

---

**No. 04-4335**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH TROY MCCONNELL,

Defendant - Appellant.

No. 04-4404

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ARMAND A. HAMMOND,

Defendant - Appellant.

No. 04-4440

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM EDWARDS,

Defendant - Appellant.

Appeals from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, District Judge.  (CR-02-548)

Argued:  December 6, 2007          Decided:  March 17, 2008

Before WILLIAMS, Chief Judge, DUNCAN, Circuit Judge, and John Preston BAILEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

6

Affirmed in part, vacated and remanded in part, and judgment withheld in part by unpublished opinion.  Judge Duncan wrote the opinion, in which Chief Judge Williams and Judge Bailey joined.  Judge Bailey wrote a separate concurring opinion.

**ARGUED:** Marcia Gail Shein, Decatur, Georgia; James Harold Babb, HOWLE & BABB, L.L.P., Sumter, South Carolina; Mary Jude Darrow, Raleigh, North Carolina; James B. Craven, III, Durham, North Carolina, for Appellants.  Mark C. Moore, Assistant United States Attorney, Jane Barrett Taylor, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Michael A. Grace, GRACE, HOLTON, TISDALE & CLIFTON, Winston-Salem, North Carolina, for Appellant Johnny Frank Davis; Matthew Anthony Victor, VICTOR, VICTOR & HELGOE, L.L.P., Charleston, West Virginia, for Appellant Donald Edward Byrd; Jeffrey M. Brandt, ROBINSON & BRANDT, Cincinnati, Ohio, for Appellant Antonio Owens; Marc Seguinot, McLean, Virginia, for Appellant Christopher Toby Hayes; Cecelia Robinson, Columbia, South Carolina, for Appellant Johnny W. Cooper, Jr.; Anthony O'Neil Dore, Beaufort, South Carolina, for Appellant Demetrius Monquite Green; John McIver Ervin, III, Darlington, South Carolina, for Appellant Furman Benjamin Quattlebaum; James Edward Holler, HOLLER, DENNIS, CORBETT, GARNER & ORMOND, Columbia, South Carolina, for Appellant Darren White; Michael W. Chesser, Aiken, South Carolina, for Appellant Anthony Keith Wilson; Jeffrey Falkner Wilkes, CRAVEN & WILKES, Greenville, South Carolina, for Appellant Tanesha Bannister; C. Rauch Wise, Greenwood, South Carolina, for Appellant David Keith Miles; Lourie A. Salley, III, Lexington, South Carolina, for Appellant Marquel Dushuan Riley; Leland Bland Greeley, Rock Hill, South Carolina, for Appellant James Hampton Williams, II.  Reginald I. Lloyd, United States Attorney, Robert Daley, Jr., Assistant United States Attorney, J. D. Rowell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

7

DUNCAN, Circuit Judge:

Johnny Frank Davis ("Davis") and fourteen others (collectively, "Appellants") appeal their convictions and sentences for conspiracy to possess with intent to distribute 5 kilograms or more of (powder) cocaine and 50 grams or more of cocaine base (commonly known as "crack cocaine"), in violation of 21 U.S.C. §§ 841(a), 846. Appellants challenge their convictions, arguing that there was insufficient evidence to support the jury's verdicts, and that the verdicts were tainted by the complexity that resulted from the district court's denial of certain Appellants' motions for severance and by improper prosecutorial vouching. Appellants also seek resentencing in light of United States v. Booker, 543 U.S. 220 (2005), and, in addition, resentencing because the trial court committed error by declining to instruct the jury to find the amounts of drugs individually attributable to each defendant, in violation of United States v. Collins, 415 F.3d 304 (4th Cir. 2005). We find no infirmity in Appellants' convictions, but vacate the sentences and remand for resentencing in light of Booker for all Appellants except Johnny Frank Davis and William Edwards. For William Edwards, we find reversible Collins error and remand.

This appeal centers on a large-scale, ten-year conspiracy to distribute cocaine in the southeastern United States. The regional kingpin, John Williams, procured large quantities of cocaine from international suppliers. He then utilized a number of so-called "lieutenants" to coordinate further distribution, often through the use of middlemen or mules, to local drug dealers in Georgia and South Carolina. Such lieutenants included, at different times, Appellants David Miles and, as part of a business partnership with another defendant, Demetrius Green. The hierarchy was loosely organized, however; conspiracy members would often buy and sell cocaine amongst themselves depending on their vacillating supplies and demands.

Investigators from the Richland County, South Carolina Sheriff's Office first infiltrated the conspiracy when their undercover agent ("UCA") met conspirator Jonathan Stroman for the purpose of obtaining significant quantities of cocaine in the summer of 2001. Stroman arranged for the UCA to meet John Williams's nephew, Corey Williams, who was serving as one of John Williams's downstream distributors at the time. The UCA effected a series of controlled purchases, each of one-half to one kilogram of cocaine, from Corey Williams. The investigators then sought and obtained orders authorizing the interception of communications

occurring over Corey Williams's cell phones (the "wiretap"). The wiretap ultimately recorded drug-related conversations with each Appellant, save Johnny Frank Davis, Johnny Cooper, and Anthony Wilson.

After several months of monitoring, the investigators learned from wiretap intercepts that Corey Williams was planning to meet his brother[1] in Atlanta to procure 3 kilograms of cocaine. Corey Williams delivered $60,000 to his brother and arranged for future delivery of the cocaine. On Corey Williams's way back to South Carolina, police apprehended him and transported him to an FBI office to discuss his possible cooperation with authorities in the ongoing investigation of the conspiracy. Corey Williams agreed, and proceeded to record via wire a number of in-person conversations with certain coconspirators, including Appellants William Edwards, Johnny Frank Davis, Johnny Cooper, and Christopher Hayes. As the evidence of the conspiracy accumulated, the investigators began making arrests. Ultimately, forty-three defendants were charged in the Third Superseding Indictment (the "Indictment") with conspiracy to possess with intent to distribute 5 kilograms or more of (powder) cocaine and 50 grams or more of cocaine base (commonly known as "crack cocaine"), in violation of

---

[1]This brother, James Williams, was tried and convicted along with Appellants, but his appeal was deconsolidated from the others and heard separately by this court. See United States v. Williams, 227 Fed. Appx. 307 (4th Cir. 2007).

21 U.S.C. §§ 841(a), 846, eighteen of which, including all fifteen Appellants, went to trial.

Shortly before trial, Corey Williams, who was slated to testify against many of his coconspirators, was murdered. The government was able to proceed, however, on the strength of the wiretap and wire recordings, and the testimony of other cooperating witnesses. In particular, the government introduced extensive testimony at trial from kingpin John Williams himself. John Williams testified that he began dealing drugs in 1993 in Athens, Georgia, traveling to New York City periodically to replenish his supply. He later enlisted the assistance of his nephew, Corey Williams, among others, to distribute the cocaine in Athens and Columbia, South Carolina. The operation soon outgrew its initial suppliers, and John Williams began procuring shipments of cocaine via small planes from California and Mexico. Each shipment typically weighed between 30 and 100 kilograms.

At first, John Williams personally distributed the cocaine to a number of dealers, including Christopher Hayes (in amounts up to 8 kilograms per transaction) and Marquel Riley. Eventually, John Williams grew wary of direct involvement with so many individuals, and limited his direct sales to his lieutenants, who in turn distributed the drugs to other middlemen and dealers. Though Corey Williams acted as a lieutenant early in the conspiracy, John Williams came to find him unreliable, and began searching for a

replacement. Cooperating witness John Dickerson ("Dickerson"), a mid-level distributor in the organization, testified that he introduced Appellant David Miles ("Miles") to John Williams as a suitable candidate, and that Miles was hired as John Williams's lieutenant in 2000. Miles then moved to Athens and managed a stash house for John Williams and oversaw further distribution to South Carolina.

John Williams testified that Miles was "the best middleman [he] ha[d] ever had." J.A. 3503. Miles supplied multiple kilograms of cocaine to Appellants Anthony Wilson, Christopher Hayes, Marquel Riley, and Johnny Cooper, using intermediaries such as Dickerson and Appellant Tanesha Bannister. Nevertheless, John Williams grew distrustful of Miles, and ultimately replaced him as lieutenant with Joe Lark ("Lark"), accompanied often by his drug business partner, Appellant Demetrius Green ("Green"). John Williams testified that on at least ten occasions, Green and Lark picked up between 12 and 17 kilograms of cocaine from him, and delivered them to South Carolina.

During this time, Corey Williams and other lieutenants emeriti continued to receive cocaine, albeit indirectly, from John Williams. Corey Williams in particular supplied Appellants Antonio Owens, Donald Byrd, Johnny Frank Davis, Armand Hammond, Joseph McConnell, Marquel Riley, Furman Quattlebaum, and Darren White. When Corey Williams was short on supply, Darren White would at

12

times secure shipments from another source and distribute them among the same group.

Appellant William Edwards ("Edwards"), a disbarred attorney, assisted Corey Williams in establishing sham businesses to process his drug earnings. From time to time, Edwards would obtain small quantities of cocaine from Corey Williams for his personal use and for use in "greasing," or incentivizing, such business deals for Corey Williams.

On May 2, 2003, the jury found all fifteen Appellants guilty of conspiracy under 21 U.S.C. § 846 to possess with intent to distribute 5 kilograms or more of cocaine, or[2] 50 grams or more of cocaine base, in violation of § 841(a) and § 841(b)(1)(A)(ii)(II),

---

[2]Section 841 punishes the possession with intent to distribute of either cocaine, § 841(b)(1)(A)(ii)(II), or cocaine base, § 841(b)(1)(A)(iii). Nevertheless, the Indictment charged the two drugs in the conjunctive. See J.A. 64 (charging Appellants with conspiracy to possess with intent to distribute "5 kilograms or more of cocaine, and 50 grams or more of cocaine base") (emphasis added). The jury instructions, on the other hand, followed the language of the statute, allowing conviction if either drug was found to be within the scope of the conspiracy in the relevant amount. See J.A. 970 ("The government is not required to prove that the conspiracy involved both cocaine and cocaine base . . . . But the government must prove that the overall scope of the conspiracy involved at least five kilograms of cocaine or at least 50 grams of cocaine base.") (emphasis added). Contrary to Appellants assertion, this seeming discrepancy does not actually pose a meaningful variance, and certainly does not undermine Appellants' convictions. See Turner v. United States, 396 U.S. 398, 420 (1970) ("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.").

13

(iii).[3]  Appellants were individually sentenced during the early months of 2004 to terms of imprisonment ranging from 120 months to life in prison.  Appellants timely appealed.

II.

A.

Appellants first challenge their conspiracy convictions, contending that there was insufficient evidence for the jury to find that Appellants were collectively involved in a single conspiracy.  The convictions must be upheld if, "viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant[s] guilty beyond a reasonable doubt."  United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).  "[D]eterminations of credibility 'are within the sole province of the jury and are not susceptible to judicial review.'"  United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting United States v. Lowe, 65 F.3d 1137, 1142 (4th Cir. 1995)).

To prove each charge of conspiracy to possess cocaine with intent to distribute, in violation of § 846, the government must

---

[3]Appellant Joseph McConnell was the only Appellant charged and tried with a substantive violation of § 841(a), for possession with intent to distribute 500 grams or more of cocaine.  The jury convicted him on that count as well.  Appellant Donald Byrd was also convicted of possessing a firearm despite being a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Neither party presented argument on appeal that those convictions are unsound.

establish that: "(1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." Burgos, 94 F.3d at 857. Direct evidence of an agreement obviously suffices to prove the first element, but circumstantial evidence of such coordination can also prove the existence of an agreement by inference. Id. at 857-58. The second element--knowledge of the conspiracy--does not require that the defendant have personal knowledge of each member or action taken in furtherance of the joint goal. Instead, an unlawful conspiracy "can have an elusive quality"; "a defendant may be convicted of conspiracy with little or no knowledge of the entire breadth of the criminal enterprise." Id. Finally, the third element, the joining of the conspiracy, can be proved whenever the evidence at least "establish[es] a slight connection between the defendant and the conspiracy." Id. at 861 (internal quotations omitted). In challenging the sufficiency of the evidence to support the conspiracy convictions here, then, Appellants "face[] a heavy burden." United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007).

In the face of mountainous and damning evidence provided by the numerous cooperating witnesses at trial, many of whom were high-ranking members of the conspiracy, Appellants predicate their sufficiency-of-the-evidence challenge on their characterization of

15

their trial as "a classic example of the concept [of federal conspiracies] grown out of control."  Appellants' Br. at 45. Appellants contend that, at most, the evidence tended to show the existence of multiple conspiracies, and the government's attempt to prove otherwise required the "'piling [of] inference upon inference.'"  Id. at 51 (quoting Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943)).  In essence, Appellants request that we go beyond the usual principles governing sufficiency-of-the-evidence review, as detailed above, and impose a heightened standard of review to ensure that the convictions are sound.

This court, sitting en banc, rejected precisely this challenge in Burgos.  Drug-conspiracy appellants had argued that our decision in United States v. Giunta, 925 F.2d 758 (4th Cir. 1991), required a "heightened degree of review regarding sufficiency challenges to conspiracy convictions."  Burgos, 94 F.3d at 859.  Finding such elevated scrutiny "not consistent with our conspiracy jurisprudence," this court overruled Giunta and reaffirmed the principle that the jury is entitled to the same respect, and its verdict the same deference, regardless of whether it finds guilt for conspiracy or for a substantive offense.  Burgos, 94 F.3d at 860.

Moving then to our limited review of the convictions here, we find ample evidence to support the jury's verdicts.  Far from requiring the "piling of inference upon inference," the facts

16

adduced at trial show a singular cohesiveness to the instant conspiracy. With the extensive live testimony of kingpin John Williams, distributor John Dickerson, and others, and the intercepted wiretap and consensual wire recordings of the dealings of distributor Corey Williams, the government was able to show multiple connections both among Appellants and between Appellants and John Williams's sophisticated drug-distribution organization. John Williams testified to engaging personally in a number of large cocaine transactions with Appellants David Miles and Demetrius Green. Further, Dickerson testified to Bannister's involvement with Miles as an intermediary, and to the buying habits of Appellants Anthony Wilson, Johnny Cooper and Christopher Hayes. Finally, the recordings of Corey Williams provided direct evidence of the purchasing proclivities of Appellants Antonio Owens, Donald Byrd, Furman Quattlebaum, Armand Hammond, Marquel Riley, Joseph McConnell, Darren White, Johnny Frank Davis, and William Edwards. Thus, the evidence before the jury showed that each Appellant was linked to the conspiracy, not by tenuous association with other minor conspirators, but by direct transactions with one or more of three high-ranking members of John Williams's drug business. Given the inappropriateness of second-guessing the jury's apparent crediting of some or all of this testimony, we cannot say that the jury acted irrationally in returning convictions for Appellants.

17

Four Appellants seek to have their convictions overturned on the theory that the district court's denial of their motions for severance under Federal Rule of Criminal Procedure 14 unfairly prejudiced their defense.[4] We review the district court's denial of such motions for abuse of discretion. United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995).

It has long been the rule that, "[b]arring special circumstances, individuals indicted together should be tried together." United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981). The mere fact that the charge to be tried is one of conspiracy provides no exception to this general precept. See United States v. Akinkoye, 185 F.3d 192, 197 (4th Cir. 1999). On the contrary, the joint-trial "presumption is especially strong in conspiracy cases." United States v. Harris, 498 F.3d 278, 291 (4th Cir. 2007). The existence of "special circumstances" is rare, indeed; "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

---

[4]Rule 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

<u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993); <u>see also</u> <u>Harris</u>, 498 F.3d at 291.  At bottom, we reverse the denial of a severance motion only when such denial would "deprive[] the defendants of a fair trial and result[] in a miscarriage of justice."  <u>Harris</u>, 498 F.3d at 291 (internal quotations omitted).

Appellants Green, Miles, Johnny Frank Davis and Anthony Wilson argue in Appellants' collective brief that the strength of evidence against the high-ranking members of the conspiracy might have impermissibly tainted the jury's determinations of guilt for "[t]he more peripheral defendants." Appellants' Br. at 56.  This argument must fail.  The district court was careful to instruct the jury that "[e]ach count, as to each defendant, and the evidence pertaining to that count and defendant should be considered separately and individually.  The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to the other defendants."  J.A. 959.  We presume that the jury complied with this instruction.  <u>See</u> <u>United States v. Alerre</u>, 430 F.3d 681, 692 (4th Cir. 2005).  We therefore find nothing in the record to suggest that the jury was prevented "from making a reliable judgment about guilt or innocence" as to each Appellant. <u>Zafiro</u>, 506 U.S. at 539.[5]

---

[5]We also note that Appellants Green and Miles, both of whom appeal the denial of their motions for severance, can hardly claim to be "peripheral defendants," as both, on multiple occasions, received large amounts of cocaine for distribution from John Williams, either directly or as part of a business partnership.

Appellant Anthony Wilson raises the additional argument that the calling of his brother, Perry Wilson, by the government in its case-in-chief unduly prejudiced the jury against him. Perry Wilson was slated to testify only as to David Miles's involvement in the conspiracy, but on cross-examination by Miles's trial counsel, was asked several questions regarding Anthony Wilson's prior drug dealing. Anthony Wilson's counsel objected, seeking a mistrial and severance. The district court denied the motion, striking the portions of Perry Wilson's testimony pertaining to Anthony Wilson. The district court immediately admonished the jury that such testimony "may not be considered by you for any purpose during your deliberations in this case." J.A. 638.

"'[C]ourts generally have discerned no reversible error where the trial court has acted promptly in sustaining an objection and advising the jury to disregard the testimony.'" United States v. Hayden, 85 F.3d 153, 158 (4th Cir. 1996) (quoting United States v. Dorsey, 45 F.3d 809, 816 (4th Cir. 1995)). As before, we see no reason to assume that the jury allowed Perry Wilson's testimony to color its verdict against Anthony Wilson. See Alerre, 430 F.3d at 692. Finding no "special circumstances" that would recommend deviation from the presumption of trying Appellants jointly, we

cannot say that the district court abused its discretion here in denying the motions for severance.[6]

### C.

Appellants finally seek to have their convictions overturned because the prosecution allegedly improperly vouched for the veracity of cooperating witnesses. The issue of improper vouching is a question of law that we review de novo. United States v. Collins, 415 F.3d 304, 307 (4th Cir. 2005).

Appellants assert that, on direct examination of certain cooperating witnesses, the prosecutor mentioned that those witnesses had entered into plea agreements requiring that the witnesses tell the truth. Such plea agreements were also mentioned in two instances during the prosecution's closing rebuttal argument. First, the prosecutor explained to the jury the consequences John Williams would face if he were found to have provided less than full cooperation: "Mr. Williams understands better than anybody else what it means if he fails to cooperate, if he discontinues that cooperation, or if he gives the government any reason to think that he's being less than forthcoming." J.A. 894-

---

[6]Appellant Armand Hammond also joins in the appeal from the denial of the motions to sever, echoing the same arguments of the other four Appellants, but does not point to any record citation of his having made such a motion before the district court. Even assuming such a motion was made, the district court would not have abused its discretion by denying it for the reasons discussed above.

21

95.    Later, the prosecutor reminded the jury of the testimony of

Perry Wilson, then opined:

> Perry Wilson didn't want to talk about his brother
> [Anthony Wilson], and he will be dealt with at a later
> time.  It's not over.  I don't know if I can blame him
> for not wanting to talk about his brother, but that's not
> my call.  He will be dealt with at a later time.

J.A. 904.

As a general matter, "[t]estimony concerning the existence of a plea or immunity agreement concerning a government witness can cut both ways." United States v. Henderson, 717 F.2d 135, 137 (4th Cir. 1983).  On the one hand, the defense may benefit from the inference that a cooperating witness will tell the government what it wants to hear in exchange for a reduced sentence or other concessions, reducing his credibility.  On the other hand, the government may benefit from the inference that it has the power to force the cooperating witness to tell the truth, lest those concessions be retracted, enhancing the credibility of the witness. As such, the decision by a district court to allow discussion on direct examination of the existence of a plea agreement and the cooperating witness's attendant promise of truthfulness does not, without more, constitute reversible error.    See id. at 138. Impermissible vouching arises only when the prosecutor cultivates the inference in his favor by "'explicitly or implicitly indicat[ing] that [he] can monitor and accurately verify the truthfulness of the witness' testimony.'" Collins, 415 F.3d at 308

22

(quoting United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990)).  Such vouching is particularly pernicious "during an attorney's soliloquy to the jury" because the prosecutor is untethered from the question-and-answer format, and therefore "potentially prejudicial statements made during closing arguments require closer scrutiny than the eliciting of information about the plea agreement during the prosecutor's case in chief."  Collins, 415 F.3d at 308.

In Collins, the prosecutor explained in her closing rebuttal argument that witnesses subject to plea agreements were under an obligation to tell the truth.  She continued, "The government is always seeking to determine whether they are telling the truth."  Id. at 307.  The Collins court, however, declined to determine whether such statement constituted improper vouching, instead finding that even if the statement were considered prosecutorial misconduct, it was harmless, as it did not "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'"  Id. at 309 (quoting United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002)) (omission in Collins).  This prejudice inquiry turns on analysis of four factors, cited in Collins: "(1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comments; and (4) whether the comments were deliberately made to divert the jury's

attention." United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997).

We follow the example set forth by the Collins court and assume, without deciding, that the statements made by the prosecutor here constituted improper vouching. A careful consideration of the same four factors reveals that any such vouching did not unfairly prejudice Appellants.[7] First, Appellants lodged a contemporaneous objection to the statements offered by the prosecutor in closing arguments. The district court issued an immediate curative instruction, as in Collins, clarifying that

> the question of what will happen in the future to a cooperating witness is a matter that is not in evidence in this case. The only thing that is in evidence are the factors that you heard about their plea agreements [and] their opportunity to possibly earn a sentencing reduction.

J.A. 904-05. Because this curative instruction was given in close proximity to the allegedly improper statements, and because the district court so clearly delineated the scope of proper consideration of the specifics of plea agreements, the first factor weighs strongly in favor of the government. See Collins, 415 F.3d at 309.

The other factors also weigh in favor of the government. The statements were fleeting, occupying only a brief portion of the

---

[7]Appellants do not discuss these factors, nor do they make any attempt to demonstrate why any improper vouching during the trial should not be considered harmless error.

24

prosecutor's one-hour closing rebuttal argument.  Next, there was overwhelming evidence of the existence of the conspiracy, and the prosecutor's statements did little to undercut the connection of any given Appellant to the broader conspiracy.[8]  Finally, Appellants have not suggested, nor is there any evidence in the record to suggest, that the statements were deliberately made to divert the jury's attention from the important decisions before them.  On balance, we conclude, as did the <u>Collins</u> court, that any impermissible vouching that might have occurred was harmless.

---

[8]We note that the jury was twice cautioned against using witness Perry Wilson's statements as evidence against Anthony Wilson, once immediately following Perry Wilson's testimony and again in connection with the allegedly improper vouching. Therefore, we do not find that the stricken statements of Perry Wilson regarding Anthony Wilson's prior drug dealing substantially undermined the other evidence of Anthony Wilson's guilt of the conspiracy charge.

Having considered and rejected all of Appellants' arguments

suggesting that their convictions are unsound,[9] we now consider

_____

[9]Appellants detail a number of other arguments attacking their
convictions.  For example, Appellants argue that the admission of
the statements of the late Corey Williams, captured via wiretap
(before his cooperating with authorities) and via wire (with Corey
Williams's consent), violated their right under the Sixth Amendment
to "confront[] . . . the witnesses against [them]."  U.S. Const.
amend. VI.  We review de novo the legal question of whether the
admission of certain evidence violates the Confrontation Clause.
<u>United States v. Halteh</u>, 224 Fed. Appx. 210, 216 (4th Cir. 2007).
     Only admission of "testimonial" statements implicates the
Confrontation Clause.  <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 68
(2004).    Statements  in  furtherance  of  a  conspiracy  are  not
testimonial.  <u>See</u> <u>id.</u> at 56; <u>United States v. Sullivan</u>, 455 F.3d
248,  258  (4th  Cir.  2006).    Prior  to  his  cooperation  with
authorities, Corey Williams was a coconspirator to Appellants.  Any
statements captured by the wiretap, therefore, are non-testimonial
and their admission does not violate the Confrontation Clause.
     Furthermore, the district court carefully circumscribed the
jury's  consideration  of  those  statements  of  Corey  Williams
captured, with his consent, via wire.  The court cautioned the jury
that the statements "are not offered to prove the truth of the
matter.  In other words, you may not take as true what Cor[e]y
Williams is saying."  S.J.A. 746.  Instead, Corey Williams's half
of  the  conversation  was  admitted  to  provide  context  for  the
captured  statements  made  by  others.    A  statement  is  not
"testimonial" unless "made for the purpose of establishing or
proving some fact."  <u>Crawford</u>, 541 U.S. at 51 (internal quotations
omitted).  Because Corey Williams's statements were not admitted
for their truth, they were not testimonial.  The cooperating Corey
Williams was not, then,  a "witness[] against [Appellants]," U.S.
Const. amend. VI, and the admission of his statements therefore
poses no Confrontation Clause problem.
     Other challenges to the convictions were made by individual
Appellants in their supplemental briefs.  For example, Appellant
William Edwards contends that his conviction must be overturned in
light of the Speedy Trial Act (the "STA"), 18 U.S.C. § 3161 et seq.
The STA requires that a defendant's trial begin within seventy days
of the filing date of the indictment.  <u>Id.</u> § 3161(c)(1).  The STA
allows for tolling of that period under certain circumstances,
however.  For example, delays attributable to the joinder of a
codefendant, § 3161(h)(7), or to the court's granting of any
reasonable  continuance,  § 3161(h)(8),  are  excluded  from  the
seventy-day timespan.  Though William Edwards's trial did not begin

Appellants' arguments made with respect to their sentences.

### III.

### A.

Appellants first challenge their sentences as violative of United States v. Booker, 543 U.S. 220 (2005). The district court sentenced each Appellant under the then-mandatory United States Sentencing Guidelines. The government concedes that this constitutes statutory error under Booker, regardless of whether the district court also violated the Sixth Amendment by "enhancing [the] sentences based on facts found by the court alone." United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005); see also id. at 547 ("The Booker Court concluded that [its] remedial scheme should apply not only to those defendants . . . whose sentences had been imposed in violation of the Sixth Amendment, but also to those defendants . . . who had been sentenced under the mandatory regime without suffering a constitutional violation.").

---

until several months after he was first indicted, much of that time coincided with the serial arrests of the Appellants throughout 2002, and with the continuance granted after the murder of Corey Williams. In light of these exclusions, the relevant time period totals fewer than seventy days. William Edwards's conviction therefore did not violate the STA.

We have carefully reviewed all the other arguments made by Appellants jointly and individually attacking their convictions, and find them to be either without merit or to describe errors that we find harmless.

27

The government also concedes that Appellants preserved the error in the district court. See United States v. Rodriguez, 433 F.3d 411, 416 (4th Cir. 2006) (noting that a claim of statutory Booker error is properly preserved when the defendant "plainly notified the court of his position that he was being sentenced illegally" and "identified the line of Supreme Court precedent upon which he now relies"). Therefore, we review the error for harmlessness. Id.

The government seeks to prove harmlessness with respect to only one Appellant--Johnny Frank Davis. It concedes, wisely, that the Booker error is reversible for the other fourteen Appellants. A defendant properly subject to the penalties of 21 U.S.C. § 841(b)(1)(A) faces a mandatory minimum sentence of life imprisonment if commission of the instant offense occurs "after two or more prior convictions for a felony drug offense have become final." 21 U.S.C. § 841(b)(1)(A). "Booker did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence." United States v. Robinson, 404 F.3d 850, 862 (4th Cir. 2005). This is so because, regardless of the role of discretion in affixing guidelines ranges, "a district court has no discretion to impose a sentence outside of the statutory range established by Congress for the offense of conviction." Id. Johnny Frank Davis had three "prior convictions for a felony drug offense," 21 U.S.C. § 841(b)(1)(A): one for possession of cocaine,

28

one for trafficking in cocaine, and one for distribution of cocaine. Thus, the mandatory or advisory nature of the Guidelines could have no impact on Johnny Frank Davis's sentence, which could not be set lower than the statutory minimum of life imprisonment. We therefore find that remand for resentencing on the basis of Booker for Johnny Frank Davis would be futile.

We must vacate the sentences of the other fourteen Appellants, however, and remand to the district court for resentencing. We have no reason to doubt that the court is not, by now, well-versed in post-Booker sentencing procedures. See Hughes, 401 F.3d at 546-47 (laying out such procedures). We also direct the court to consult United States v. Pauley, 511 F.3d 468, (4th Cir. 2007), to assist in applying the Supreme Court's most recent pronouncements in the area of sentencing law. See Gall v. United States, 128 S. Ct. 586 (2007); Kimbrough v. United States, 128 S. Ct. 558 (2007).

B.

Finally, Appellants challenge their sentences under United States v. Collins, 415 F.3d 304 (4th Cir. 2005). A brief discussion of the issue this court addressed in Collins would provide useful background for our current analysis.

1.

The Collins court considered the extent to which Apprendi v. New Jersey, 530 U.S. 466 (2000), altered this circuit's earlier drug conspiracy precedents, most notably United States v. Irvin, 2

29

F.3d 72 (4th Cir. 1993). The Irvin court had been tasked with choosing between two competing "plausible interpretation[s]" of the interplay between § 846, the conspiracy statute, and § 841(b), a statute that imposes penalties for substantive violations of the narcotics distribution statute § 841(a). Collins, 415 F.3d at 312. Section 841(b) details a graduated penalty scheme, whereby a defendant found guilty of distribution of a certain amount of narcotics is subjected to one of three different sets of statutory minimum and maximum sentences based on that drug amount. See § 841(b)(1)(A), (B), (C). Insofar as § 846 subjects those who conspire to commit a § 841(a) offense "to the same penalties as those prescribed for [a substantive § 841(a)] offense," the question posed to the Irvin court was whether the district court should "aggregate the[] amounts . . . involved in each object of the offense of the conspiracy, . . . and then assign to each coconspirator the mandatory minimum sentence of § 841(b) corresponding to the aggregated quantity of narcotics," or should instead "individualize[]" each coconspirator's sentence "to reflect [his] relative culpability in the conspiracy." Irvin, 2 F.3d at 76. The Irvin court selected the latter interpretation as "the most reasonable," holding that "the statutes require a district court to determine the accountability of each coconspirator for each object offense and the quantity of narcotics involved in each object offense using the principles of Pinkerton [v. United States,

30

328 U.S. 640 (1946)]." Id. As a result, in the post-Irvin era, the proper quantity of narcotics was determined by the district court itself, then matched with the corresponding range in § 841(b) to determine the appropriate maximum and minimum penalty.

In 2000, however, the Supreme Court issued its landmark decision in Apprendi, announcing that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. This court soon thereafter convened en banc to consider the effect of Apprendi on the levying of § 841(b) penalties for substantive violations (as opposed to conspiratorial violations via § 846) of § 841(a). See United States v. Promise, 255 F.3d 150, 156 (4th Cir. 2001) (en banc). We concluded that "the prescribed statutory maximum" benchmarked in Apprendi is that found in the third and most lenient subsection of § 841(b)(1), namely § 841(b)(1)(C), applicable to cases involving drug amounts less than the thresholds described in the other two subsections, § 841(b)(1)(A) and (B). Promise, 255 F.3d at 156. "Apprendi dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold drug quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged

31

in the indictment and proved to the jury beyond a reasonable doubt." Id.

The Promise court did not, however, have occasion to address whether Apprendi's "prescribed statutory maximum" for a violation of § 841(a) via the conspiracy statute of § 846 was that found in the subsection of § 841(b)(1) corresponding to the amount of drugs contemplated by the conspiracy as a whole or in the subsection corresponding to the amount of drugs attributable to each individual defendant. It is this lacuna that was filled by the Collins court.

The Collins court harmonized Irvin and Apprendi by substantially reaffirming the holding of Irvin but reassigning, from the district court to the jury, the role of determining the amounts attributable to individual conspirators.

> Irvin's holding that Pinkerton principles should be used to determine, for sentencing purposes, the amount of narcotics attributable to any one individual in a conspiracy, remains good law. Under current precedent, rather than the district court applying Pinkerton principles when determining the appropriate sentence under § 841(b), that same court must instead instruct a jury to use Pinkerton principles when making the same determination.

Collins, 415 F.3d at 314; see also United States v. Foster, 507 F.3d 233, 250-51 (4th Cir. 2007) (recognizing that, under Collins, "in order for the statutory maximums and mandatory minimums of § 841(b) to apply in a drug conspiracy case, the jury must determine that the threshold drug amount was reason[]ably

32

foreseeable to the individual defendant"). To hold otherwise, the court feared, would "attribute[] to . . . an individual member of the conspiracy[] the quantity of [drugs] distributed by the entire conspiracy" in violation of the individual-attribution principle of Irvin. Collins, 415 F.3d at 314.

Because the district court in Collins had expressly instructed the jury to concern itself only with the amount of drugs that "applie[d] to the entire group of conspirators," the Collins court found error. Id. at 311. We note that the Collins court found such error to be merely that of providing improper jury instructions. See id. at 306 (summarizing Collins's argument under Irvin as contending "that the district court gave improper jury instructions"); id. at 311 (analyzing Collins's claim under the heading "Jury Charge Regarding Drug Quantity"); id. at 314 (discussing the error as "the district court's failure to issue appropriate jury instructions concerning the facts necessary to determine Collins' sentence"); see also United States v. Ferguson, 245 Fed. Appx. 233, 246 (4th Cir. 2007) (unpublished) (Niemeyer, J., dissenting) (explaining that, where the jury does make a finding under Promise of the amount of drugs involved in the conspiracy, the failure of the district court to further ask the jury to determine the individual amount attributable to each conspirator "is simply an error of instruction").

2.

Having summarized the import of <u>Collins</u>, we can now apply its holding to Appellants here.  Before doing so, however, we must determine whether Appellants preserved a <u>Collins</u> objection below, as the answer in turn determines the appropriate standard of review we must apply to Appellants' challenge.

The government suggests that "a close review of the record below indicates that these defendants did not preserve the alleged error."  Appellee's Br. at 82.  The government's argument is simply incorrect.  Counsel for Antonio Owens beseeched the district court at the charge conference:

> Based on the conference we had earlier, the concern of the group appears to be that in this post Apprendi era that we are confronted with an area of the law that still is very much in a state of flux, that the United States Supreme Court has not yet addressed many of the areas that the Fourth Circuit is just now addressing with regard to Apprendi concerns.
>
> And for that reason the defense as a whole collectively is requesting that Your Honor require that the jury find, factually, weight amounts with regard to powder cocaine or crack cocaine, and/or crack cocaine, with regard to each individual accused.
>
> . . .
>
> And we are urging the court to take the conservative approach and have this jury make factual determinations with regard to each defendant with regard to whether or not the government has met its burden of proof beyond a reasonable doubt of the threshold amounts with regard to each individual accused.

S.J.A. 780-81.  This request appears to zero in precisely on the holding later issued by <u>Collins</u>.  Notwithstanding the prescience of

34

counsel, the government argues that disagreement among Appellants'
attorneys regarding other issues relating to special verdict forms
suggests that Owens's counsel was speaking here only for her
client. This assertion is belied by the comment of the district
court just moments after Owens's request that "I assume everyone is
joined in these issues, you don't have to specifically say so."
S.J.A. 783.

The district court ultimately denied Appellants' request for
individualized determinations of drug amounts, and instructed the
jury: "You are not being asked to determine the amount of drugs
each defendant might have been involved with. It is the amount of
drugs involved in the overall conspiracy which is at issue." J.A.
970. Plainly, these instructions run afoul of the Collins
requirement that the jury "'determine the accountability of each
coconspirator for . . . the quantity of narcotics involved in each
object offense using the principles of Pinkerton.'" Collins, 415
F.3d at 313-14 (quoting Irvin, 2 F.3d at 76).[10]

_____

[10]The government urges us to gloss over the clear guidance
provided to the jury by the district court, and instead find the
instructions "balanced and fair to both sides" in light of the
length of the trial and complexity of the issues. Appellee's Br.
at 82. Of course, the government itself is responsible for the
trial and sentencing complexity that resulted from trying eighteen
defendants together. We see no reason to suspect that the jury
failed to follow its express instructions to eschew individualized
attribution. See United States v. Alerre, 430 F.3d 681, 692 (4th
Cir. 2005).

We find, therefore, that the district court committed <u>Collins</u> error in its jury instructions, and that the error was preserved below.[11]  These two findings combine to require that we review the <u>Collins</u> error for harmlessness.  Before engaging in the review, however, a brief discussion of the contours of harmless error in this context is warranted.

3.

The Supreme Court's decision in <u>Neder v. United States</u>, 527 U.S. 1 (1999), is instructive.  As a general matter, preserved errors, even those of constitutional moment, are reviewed for harmlessness under Federal Rule of Criminal Procedure 52(a).[12]  <u>See</u> <u>id.</u> at 7-8.  Indeed, "most constitutional errors can be harmless." <u>Id.</u> at 8 (internal quotations omitted).  The narrow exception to the rule arises in "a limited class of fundamental constitutional errors that defy analysis by harmless error standards."  <u>Id.</u> at 7 (internal quotations omitted).  This class of errors, dubbed "structural errors," encompasses only a small subset of constitutional errors, and requires reviewing courts to examine

---

[11]Such error calls into question Appellants' <u>sentences</u> only, not their <u>convictions</u>, as suggested by Appellants.  <u>See</u> <u>Collins</u>, 415 F.3d at 314 ("Guilt of the substantive offense defined in § 841(a) is not dependent upon a determination of the amount or type of narcotics distributed.  Therefore, the error below concerns not § 841(a), but the penalty provisions in § 841(b). . . . Collins' conviction under § 846 is sound.").

[12]Rule 52(a) provides, "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  Fed. R. Crim. P. 52.

"all other constitutional errors . . . by apply[ing] Rule 52(a)'s harmless-error analysis." Id. (emphasis added).

The Neder Court proceeded to find that an error arising from "a jury instruction that omits an element of the offense . . . differs markedly from the constitutional violations we have found to defy harmless-error review." Id. at 8. The Court considered the complete omission of an element of the offense from jury instructions to be analogous "to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis." Id. at 10. Thus, notwithstanding the fact that such error "precludes the jury from making a finding on [an] actual element of the offense," id., thereby unconstitutionally "infring[ing] upon [its] fact-finding role," id. at 18, a reviewing court must proceed to determine if the error can be deemed harmless. Id.

"[T]he test for determining whether a constitutional error is harmless . . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 15. To make this determination, a reviewing court will often be required to "conduct a thorough examination of the record" to "safeguard[] the jury guarantee." Id. at 19. If, after such determination, "the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error--for example, where the defendant contested the

37

omitted element and raised evidence sufficient to support a contrary finding--it should not find the error harmless." Id. The defendant may not create reasonable doubt by pointing to scant evidence in the record, however; only such "evidence that could rationally lead to a contrary finding with respect to the omitted element" is sufficient to stave off a finding of harmlessness. Id.

This court has understood Neder to require two inquiries, either of which may result in a finding of harmlessness. "First, 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.'" United States v. Brown, 202 F.3d 691, 700 (4th Cir. 2000) (quoting Neder, 527 U.S. at 17).[13]  When a defendant has

---

[13]Under plain-error review, a reviewing court might decline to recognize an error under similar circumstances.  See United States v. Cotton, 535 U.S. 625, 632-33 (2002) (holding that an appellate court may not recognize as error the omission of drug quantity from an indictment under § 846, because, since "[t]he evidence that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted,'" the error did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings").  Indeed, this court recently applied Cotton in declining, on plain-error review, to recognize a Collins error where the evidence of the defendant's individual responsibility for an amount in excess of 50 grams of crack "was overwhelming and essentially uncontroverted."  Foster, 507 F.3d at 250-51.  The defendant in Foster had offered only a blanket challenge to the drug quantities attributed to him, instead focusing his efforts on challenging his guilt.  The Foster court concluded that, in the balance, "the government's overwhelming evidence of the substantial quantities of crack reasonably foreseeable" to the defendant would have led a properly instructed jury to attribute at least 50 grams

38

contested the evidence supporting the omitted element, however, the reviewing court must next "determine whether the 'record contains evidence that could rationally lead to a contrary finding with respect to that omitted element.'  If not, then the error is harmless." Id. (quoting Neder, 527 U.S. at 19) (internal citations omitted).[14]

This court has had numerous occasions since Brown to apply Neder.  In one post-Apprendi case, for example, this court found harmless the district court's erroneous instruction to the jury that an element of the offense of "impeding, intimidating, or obstructing an employee of the United States acting in an official

---

of crack to him, and affirmed his sentence.  Id. at 252.
We do not apply Cotton here, however.  This court has recognized that "[t]he Cotton principles . . . are applicable only on plain error review, [not when we review] for harmless error." United States v. Robinson, 460 F.3d 550, 560 (4th Cir. 2006). Though harmless-error review, detailed in Brown and applied here, also considers the weight of the evidence and whether the substance of the underlying omitted element was contested, its framework is analytically distinct from the plain-error inquiry.  See United States v. Olano, 507 U.S. 725, 732-35 (1993) (recognizing a four-part test before reversal for plain error is appropriate, and then, only at the discretion of the reviewing court).  Our holding in Robinson, though prohibiting application of Cotton here, does not, as it cannot under Neder, foreclose application of harmless-error analysis to the Collins error in this case.

[14]The Brown court analyzed the harmlessness of the district court's failure to instruct the jury to identify three specific criminal acts that constituted a "continuing series" for purposes of proving a "continuing criminal enterprise" punishable under 21 U.S.C. § 848.  Because the government had not sought to identify any such acts at trial as constituting a "continuing series," and Brown had objected to evidence supporting the potential candidates for such a series, the court ultimately found the error reversible. Brown, 202 F.3d at 702-03.

capacity," in violation of 26 U.S.C. § 7212(a), was reserved to the court to decide as a matter of law. United States v. Lovern, 293 F.3d 695, 696-97 (4th Cir. 2002). In another, this court found harmless what would come to be known as Promise error because "[n]o defendant suggested that [the threshold drug] amounts [of § 841(b)] had not been proven at trial, and we conclude that the uncontroverted evidence demonstrated amounts hundreds of times more than the amounts charged." United States v. Strickland, 245 F.3d 368, 380 (4th Cir. 2001) (applying Neder on plain-error review, while recognizing that the ultimate inquiry in both plain-error and harmless-error review, that is, "whether substantial rights of the defendant were affected," is the same, though the burden of proof is allocated differently under the two standards). See also United States v. Higgs, 353 F.3d 281, 308 (4th Cir. 2003) (finding harmless error the issuance of a capital indictment that failed to allege the requisite statutory aggravating factors).

4.

In light of this understanding of harmless-error analysis, we apply the standard to the Collins errors here. Each Appellant was charged and convicted with conspiracy under § 846 to possess with intent to distribute 5 kilograms of cocaine or 50 grams of cocaine base in violation of § 841(a) and § 841(b)(1)(A). The district court declined to offer instructions that would have allowed the jury to find an Appellant guilty of conspiracy to distribute a

lesser amount of cocaine or cocaine base, as would be punished more leniently under § 841(b)(1)(B) or (C). Therefore, the verdicts returned by the jury necessarily corresponded to the offenses punished under § 841(b)(1)(A). As we recognized in Collins, a § 846 offense punished under § 841(b)(1)(A) has, as an element that must be found by the jury, an individualized determination that the particular defendant was responsible for 5 kilograms of cocaine or 50 grams of cocaine base. It is this element that was omitted from the jury instructions, and for which we now review the record to determine if the evidence supported a finding of the element beyond a reasonable doubt.

After careful review of the trial and sentencing transcripts for all fifteen Appellants, we find that each, to a varying extent, contested the drug amounts attributed to him or her by trial testimony and by the district court at sentencing.[15] See Brown, 202 F.3d at 700. We therefore proceed directly to the second Brown inquiry, "whether the 'record contains evidence that could rationally lead to a contrary finding with respect to th[e] omitted element'" of the individualized drug amounts of 5 kilograms of cocaine or 50 grams of cocaine base. Brown, 202 F.3d at 701 (quoting Neder, 527 U.S. at 19).

---

[15]Because the trial and sentencing hearings predated our decision in Collins, Appellants properly objected at sentencing to the drug amounts attributed to them, as individualized drug amounts were, under then-current law, mere sentencing factors.

In his extensive testimony at trial, John Williams recounted his years of securing and distributing cocaine, totaling approximately 2000 kilograms. He also explained that he understood that the vast majority, if not all, of the cocaine would be "cooked" into crack before it was sold to the end-user. Numerous other witnesses corroborated this understanding. Furthermore, recordings from Corey Williams's wiretap and wire captured various Appellants discussing crack sales or their prowess in cooking crack. As aptly described by the district court at one sentencing hearing, "Everyone testified [that the cocaine] was converted into crack, that the whole purpose of this conspiracy was to buy cocaine that could then be transferred into crack by means of methods that would increase its weight and increase its profitability." J.A. 5808. We find the evidence overwhelming that each member of the conspiracy knew full well that the cocaine they were distributing was being sold as crack. In most instances, in fact, Appellants themselves were the "chefs." See, e.g., S.J.A. 527 (transcript of wiretap recording in which Marquel Riley describes "being the chef for other people" and "[c]ooking they food for 'em"); J.A. 5808 (same, in which Byrd refers to himself as "a master chef").

In light of this overwhelming evidence, we must find each Collins error harmless, provided that no rational jury could attribute less than 50 grams of crack (or 50 grams of cocaine, which would foreseeably be converted to crack) to each Appellant.

42

The evidence at trial showed that, even by conservative estimates, most Appellants were responsible for many <u>thousands</u> or <u>tens of thousands</u> of grams of crack.  Even "lower-level" members of the conspiracy were invariably caught by eyewitnesses, wiretap, wire, or some combination of the three, engaging in transactions totaling a few thousand grams of crack.  A closer look at two examples should serve to illustrate this point.

So-called peripheral conspirator Johnny Frank Davis engaged in a number of controlled purchases with a UCA.  Each purchase totaled 250 grams of cocaine, and each such meeting was <u>recorded and videotaped</u>.  These recordings also captured Davis bragging about his ability to cook "crack" from cocaine and his skill in selling drugs.  Another witness testified that Davis had traded a Mercedes-Benz automobile for another 250 grams of cocaine.  Davis was also caught on a wiretap recording discussing past deals with Corey Williams, informing him that he had lined up two customers for 500 grams apiece, and bantering about converting the cocaine to crack.  Davis's objection to this evidence was non-specific: he informed the district court that he was never involved in the conspiracy and never engaged in any of the transactions described at trial.  Because of the overwhelming amount of evidence suggesting that Davis was personally responsible for several thousand grams of cocaine that he planned to convert to crack, and because Davis offered little to contest that evidence, we find that no rational

43

jury would have failed to find Davis personally responsible for 50 grams or more of crack.

A similar analysis governs the evidence the individual drug amounts attributable to Furman Quattlebaum. No fewer than six witnesses testified to engaging personally in drug transactions with Quattlebaum, or to watching others do so, in amounts ranging from 250 grams to 2000 grams of cocaine. One witness testified to seeing Quattlebaum sell crack in amounts of over 50 grams. Quattlebaum was also captured on a number of intercepted telephone calls to Corey Williams, discussing his sales of crack. In one, Quattlebaum can be heard describing his use of his oven to cook crack in preparation for distribution. To contest these weights, Quattlebaum offered the blanket assertion that "the whole [pre-sentence report]" was flawed, and that he objected to "everything to do with drug weight." J.A. 5833-34. Again, in the face of overwhelming evidence adduced at trial that Quattlebaum was involved in the sale of many thousands of grams of crack, Quattlebaum countered with bare assertions. We find that no rational jury would have failed to find Quattlebaum personally responsible for 50 grams or more of crack.

After careful review of the voluminous record in this appeal, we make similar findings as to the large amounts of crack attributable to each individual Appellant (save William Edwards). As such, we find the Collins error with respect to those fourteen

44

Appellants to be harmless, since the "'record contains [no] evidence that could rationally lead to a contrary finding with respect to th[e] omitted element'" of the individualized drug amounts of 5 kilograms of cocaine or 50 grams of cocaine base for each such Appellant. See Brown, 202 F.3d at 701 (quoting Neder, 527 U.S. at 19).

William Edwards, on the other hand, was connected to the conspiracy only through Corey Williams, and then only in the capacity of establishing "front" businesses for him and accepting small amounts of cocaine to "grease" deals with potential business associates. The government concedes that the Collins error in the case of William Edwards cannot be shown to be harmless. We therefore offer the government the same choice of remedies presented in Collins:

> We will withhold judgment as to the conspiracy count [for William Edwards] for thirty days. The Government may elect to request that we affirm the conspiracy conviction and remand for [Edwards] to be re-sentenced under the default penalty provision in § 841 that applies when the amount of [cocaine] attributable to a defendant is less than [500] grams, 21 U.S.C. § 841(b)(1)(C) . . . or the Government can request that we reverse [Edwards's] conspiracy conviction and remand for a new trial.

Collins, 415 F.3d at 315.[16]

---

[16]We have carefully considered Appellants' other arguments challenging their sentences, including the many objections to individual sentencing enhancements. We find these challenges to be without merit.

45

IV.

Having reviewed all of Appellants' arguments challenging their convictions and sentences, we find them to be without merit, save reversible Booker error for all Appellants except Johnny Frank Davis, and reversible Collins error for William Edwards. We therefore vacate the sentences of all Appellants except for Johnny Frank Davis and William Edwards, the latter being preserved only until the government makes its election of remedy pursuant to Collins. On remand for the thirteen Appellants to be re-sentenced imminently under Booker, we note briefly that, because we have found no reversible Collins error, the statutory penalty scheme of § 841(b)(1)(A), with its attendant statutory minima and maxima, remains the proper framework in which to consider Appellants' new sentences.[17]

AFFIRMED IN PART,
VACATED AND REMANDED IN PART,
AND JUDGMENT WITHHELD IN PART

---

[17]On November 1, 2007, the United States Sentencing Commission lowered the Guidelines penalties for most crack-cocaine offenses. See 72 Fed. Reg. 28558, 28571-73; U.S.S.G. App. C, Supp. Amend. 706; U.S.S.G. § 2D1.1 (2007). These amendments have since been given retroactive effect, as of March 3, 2008. On Booker remand, the district court should be careful to apply these amendments as appropriate.

BAILEY, District Judge, concurring:

I fully concur in Judge Duncan's excellent opinion. I write separately to urge this Court to take this case or some other suitable case en banc to consider the viability of United States v. Collins, 415 F.3d 304 (4th Cir. 2005), in the wake of United States v. Booker, 543 U.S. 220 (2005). I am of the opinion that Collins is no longer viable for the reasons stated in footnote 12 of United States v. Foster, 507 F.3d 233 (4th Cir. 2007), and the reasons stated in Judge Niemeyer's dissent in United States v. Ferguson, 245 Fed. Appx. 233 (4th Cir. 2007). See also Derman v. United States, 298 F.3d 34, 42-43 (1st Cir. 2002), United States v. Turner, 319 F.3d 716, 722-23 (5th Cir. 2003), United States v. Knight, 342 F.3d 697, 710-11 (7th Cir. 2003), United States v. Phillips, 349 F.3d 138, 141-43 (3d Cir. 2003), vacated on other grounds, 543 U.S. 1102 (2005), and United States v. Stiger, 413 F.3d 1185 (10th Cir. 2005). I am of the opinion that the only issue which should be sent to the jury is the drug type and weight for the entire conspiracy, leaving individual culpability to the sentencing judge.